(791 P.2d 1338)
No. 63,432

IN THE MATTER OF THE APPEAL OF THE DIRECTOR OF PROPERTY
VALUATION FROM THE BOARD OF TAX APPEALS REGARDING THE
TAX PROTESTS OF PARMAC, INC., FOR THE YEARS 1984, 1985, AND
1986 IN MONTGOMERY COUNTY, KANSAS.

Opinion filed November 17, 1989.

*William E. Waters*, of Kansas Department of Revenue, Division of Property Valuation, of Topeka, for the appellant.

*Joe L. Levy*, of Hall, Levy, Lively, DeVore, Belot and Bell, of Coffeyville, for the appellee.

Before LEWIS, P.J., ELLIOTT and LARSON JJ.

LEWIS, J.: This is an appeal by the director of property valuation of the State of Kansas (Director) from the judgment of the district court of Montgomery County, which affirmed an order of the

Board of Tax Appeals (BOTA) reducing the valuation on certain personal property belonging to Parmac, Inc., (Parmac) for the years 1984, 1985, and 1986.

We pause to note the unusual posture of the parties to this action. This is an appeal wherein the Director is complaining about a decision against him by the BOTA. We doubt that the Director and the BOTA are often antagonists in cases of this nature. Counsel for the Director advises that he personally knows of no other occasion on which the parties have been antagonistic at this level of litigation. We make note of this fact because we find it to be of some significance in our decision.

After an examination of the record, we find no error and affirm.

Parmac is a company involved in the oil business which found its finances strained in the recent hard times which have beset the oil industry. One burden Parmac found particularly bothersome was its liability for personal property taxes. It first confronted Montgomery County over an assessment in 1983 and was successful in appealing that assessment to the BOTA.

In this case, the evidence shows that the Montgomery County Appraiser valued Parmac's personal property by using his own method which involved taking the original acquisition cost and applying to that cost trending factors based upon the individual lives of each type of equipment, which were established by the county appraiser. Parmac was aggrieved by this procedure and took that grievance before the BOTA, arguing that the county should have started with the value established in the 1983 litigation by the BOTA and then applied the trending factors to that value. The BOTA, on May 20, 1987, rejected the argument of Parmac and upheld the appraisal by the county appraiser.

Parmac then filed a motion for rehearing with the BOTA and, upon the filing of that motion, the Director personally intervened in the matter. It is the decision of the BOTA on the petition for rehearing and the trial court's affirmance of the action by the BOTA which form the basis for the current appeal. The principal antagonists on this appeal are Parmac and the Director. Montgomery County has advised this court that it does not contest the result reached by the BOTA and affirmed by the district court.

The facts developed before the BOTA and the evidence introduced during the proceeding involve, for the most part, technical and often theoretical theories on how to place values on properties for taxation purposes. This evidence is well known to the parties, who undoubtedly have a better grasp and understanding of the technicalities than does this court. We do not intend to repeat or analyze the evidence in this opinion, but will only highlight what we perceive the dispute to be, and how we believe it was properly resolved.

The position taken by the Director in this litigation is that in 1985 he devised, with the assistance of several experts in the field, trending factors based on industry-wide lives. These guidelines call on individual lives to be placed on all equipment used in a single industry and were designed to assure uniformity of taxation on all equipment used by that industry throughout the State of Kansas. For instance, all personal property in a bakery would be assigned the same useful life for tax purposes instead of assigning a baking pan one useful life and an oven another. In this particular case, the Director had designed guidelines for use in the oil business and, if they had been employed, all of Parmac's property would have been assigned the same useful life.

In contrast to the industry-wide guidelines devised by the Director, the Montgomery County Appraiser employed a method wherein separate and different items owned by the taxpayer were assigned different lives, and the trending factors were then applied to each item. In essence, the Montgomery County Appraiser did not apply the guidelines devised by the Director, indicated that he did not believe they correctly reflected market value, and candidly admitted, for that reason, he is still not using them.

The Director argues that Montgomery County had no authority to devise its own method of valuation but was required to follow the guidelines issued by the Director in assessing Parmac's property. The evidence shows that if the industry-wide guidelines devised by the Director were utilized, Parmac's tax bill would increase by $36,915 for 1985 and $43,522 for 1986.

On the rehearing, the BOTA, which is composed of five individuals, returned a four to one decision in which it affirmed its earlier order approving the county appraisal and, in addition, reduced the county's appraised value of Parmac's property by a

factor of 20 percent for 1984, 15 percent for 1985, and 10 percent for 1986, for reasons of "economic obsolescence." The dissenting opinion indicated that the author agreed with the reduction of values, but disagreed with the methodology adopted by the majority opinion.

We first turn to define the perimeters of our review of the district court's decision. The BOTA is an administrative agency. *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 341, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972). Under K.S.A. 1988 Supp. 74-2426(c), appeals from administrative agency decisions are governed by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* That act provides that review of disputed facts shall be limited to the agency record with the exception of some limited circumstances not applicable here. K.S.A. 1988 Supp. 77-618. The scope of review by the district court of agency decisions is found at K.S.A. 77-621, and the Kansas Supreme Court in *Board of Johnson County Comm'rs v. J. A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986), defined the scope of review by the district court and by appellate courts in the following manner:

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

" 'In reviewing a district court's judgment, as above, [the appellate] court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' "

We hold here that the district court in this case followed the required procedures in reviewing the decision of the BOTA. We can find no fault with the action of the district court in that regard.

Perhaps the key issue presented in this case is whether Montgomery County had the authority to deviate from the Director's mandated statewide industry guidelines. Both sides presented evidence on the whys and wherefores of this issue, with the Montgomery County Appraiser testifying that the county's method was designed to arrive at fair market value of the property

and took into consideration the depressed condition of the oil industry. He further testified that he was not even aware of the new guidelines established by the State of Kansas until December of 1986 but that, had he been aware of them, he would not have used them because, in his opinion, they did not correctly reflect market value.

On the other side of this argument, the Director offered the testimony of Dr. Daicoff of the University of Kansas, who was instrumental in devising the guidelines and who testified that, in his opinion, a county appraiser lacked the expertise to develop his or her own guidelines in assessing personal property for taxation. In all deference to Dr. Daicoff, if we were to accept his opinion as controlling, we would render 105 county appraisers superfluous and could then develop a system which would utilize 105 computers into which could be fed the Director's guidelines, and out of which would then come cold, logical answers which would be applied without room for adjustment to local or regional conditions.

Our review of the law leads us to believe that the legislature has realized the danger of an arbitrary and rigid system and has opted to leave room for adjustment in that system. K.S.A. 1988 Supp. 79-1412a *Sixth* states:

"The county appraiser or district appraiser in setting values for various types of personal property, shall conform to the values for such property as shown in the personal property appraisal guides devised or prescribed by the director of property valuation."

A reading of this statute would lead one to believe that there is not room for deviation from prescribed guidelines. However, K.S.A. 79-1456 provides that margin for deviation as follows:

"The county appraiser shall follow the policies, procedures and guidelines of the director of property valuation in the performance of the duties of the office of county appraiser.

"The county appraiser in establishing values for various types of personal property, shall conform to the values for such property as shown in the personal property appraisal guides prescribed or furnished by the director of property valuation. *The county appraiser may deviate from the values shown in such guides on an individual piece of property for just cause shown and in a manner consistent with achieving fair market value.*" (Emphasis added.)

In this case, the BOTA held, and the district court affirmed, that the Montgomery County Appraiser was not bound by the statewide guidelines and that he could deviate from them. The County's methods more accurately reflected fair market value than did the director's guidelines and thus the BOTA approved the deviation from those guidelines.

In *Northern Natural Gas v. Dwyer*, 208 Kan. at 342, our Supreme Court described the BOTA in the following manner: "The State Board of Tax Appeals is the highest administrative tribunal established by law to determine controversies relating to assessments of property for ad valorem tax purposes. [Citation omitted.]"

To put it bluntly, the BOTA is a tribunal whose very reason for existence is to decide matters of this nature, and we give great credence and assign high value to its decisions when it is acting within its area of expertise.

In *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 809, 667 P.2d 306 (1983), the Kansas Supreme Court reviewed a decision of the district court affirming action taken by the Public Employees Relation Board:

"The PERB orders in this case are partly factual determinations, which are subject to the review stated above, and partly determinations of law, which involve a different standard of review. Usually, however, the legal interpretation of a statute by an administrative board or agency, charged by the legislature with the authority to enforce the statute, is entitled to a great deal of judicial deference. In *Richardson v. St. Mary Hospital*, 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981), the court noted that:

" 'In reviewing questions of law, the trial court may substitute its judgment for that of the agency, although ordinarily the court will give deference to the agency's interpretation of the law.'

"This deference has long been reflected in Kansas law. In *Harrison v. Benefit Society*, 61 Kan. 134, 140, 59 Pac. 266 (1899), it is said:

" 'The rule is well settled that "in all cases of ambiguity the contemporaneous construction not only of the courts but of the departments, and even of the officials whose duty it is to carry the law into effect, is controlling." ' "

See *State v. Helgerson*, 212 Kan. 412, 413, 511 P.2d 221 (1973); *Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600, 607, 371 P.2d 134 (1962).

In *Kansas Bd. of Regents*, 233 Kan. at 810, the court adopted a rule stated in 2 Am. Jur. 2d, Administrative Law § 676, p. 556, as follows:

" 'The ruling of an administrative agency on questions of law, while not as conclusive as its findings of facts, is nevertheless persuasive and given weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience.' "

The BOTA is entitled to the deference outlined above in its conclusion that Montgomery County was permitted to deviate from the Director's guidelines and that it did so in a manner and by a method acceptable under the law as construed by the BOTA. The district court's decision approving the BOTA on that issue is affirmed by this court.

The Director argued that, at the very least, Montgomery County should be required to have started with the industry-wide guidelines adopted by the Director and to have worked its way down to the valuation of the property from that point of beginning. It is possible that the Director's argument has some merit. However, this court is not inclined to reverse the decision in a manner which will result only in requiring Montgomery County to reach the same decision it has reached in this case by jumping through a series of different hoops.

The Director next argues that the decision to reduce the appraisals in 1984, 1985, and 1986, by 20 percent, 15 percent, and 10 percent, respectively, was not supported by substantial competent evidence. We disagree. Both sides presented evidence of the fair market value of the property in question. We will not review the evidence in this opinion. Suffice it to say, the BOTA findings indicate that its percentage reductions were made in order to place the value of the property at 100 percent of market value. As we pointed out earlier, the evidence in this case was technical and theoretical. It was also sometimes confusing, sometimes scanty, and almost always antagonistic to that presented by the other side. Nevertheless, we are convinced that the decision of the trial court, upholding the BOTA's decision, was supported by substantial competent evidence insofar as the reduction in value by percentages is concerned. The decision of the BOTA was not fraudulent, arbitrary, or capricious, and neither was the

action of the district court in affirming that decision. As a result, we affirm the district court's decision in that regard.

We note that, in its decision, the district court employed language that could cause some concern. In his opinion, the trial judge stated that the BOTA had reduced the appraisal by the county by an "arbitrary 20 percent in tax year 1984, 15 percent in tax year 1985, and 10 percent in tax year 1986." The use of the term "arbitrary" by the trial judge was unfortunate and on oral argument we were assured by counsel for both parties that the trial judge did not intend to infer by the use of that term that the BOTA had acted arbitrarily in making these reductions, or had done so with no evidentiary basis. With this explanation from counsel, we hold that the term "arbitrary," as set forth in the district court's opinion, was used inadvertently and inappropriately and, thus, we disregard it.

We extend great deference to the decision of the BOTA in deciding an issue well within its area of expertise. Based on that deference, as well as our own independent review of the record, we affirm the decision of the district court.

Affirmed.