(857 P.2d 1386)
No. 68,683

BOARD OF COUNTY COMMISSIONERS, COUNTY APPRAISER, COUNTY TREASURER, and COUNTY CLERK OF JOHNSON COUNTY, KANSAS, *Appellants,* v. THOMAS H. SMITH, *et al., Appellees.*

Opinion filed August 13, 1993.

*Lisa R. Wetzler* and *Rebecca A. Sanders*, of the Johnson County Legal Department, of Olathe, for appellants.

*Steven B. Moore*, of Watson, Ess, Marshall & Enggas, of Olathe, for appellees.

Before BRISCOE, C.J., RULON and GREEN, JJ.

RULON, J.: The Johnson County Board of County Commissioners, the Johnson County Appraiser, the Johnson County Treasurer, and the Johnson County Clerk, petitioners, appeal a decision of the State Board of Tax Appeals (BOTA), as affirmed by the district court, classifying 2.26 acres owned by the respondents Thomas H. Smith, Margie E. Smith, James D. Neighbors, and Eleanor J. Neighbors, as agricultural land instead of vacant land. We affirm.

Essentially, we must decide if BOTA properly interpreted K.S.A. 1992 Supp. 79-1476 and Article 11, § 1(b) of the Kansas Constitution.

The facts of this case are not in dispute and reduced to their essence are as follows:

Respondents own a 2.26-acre tract of land located near the corner of 119th and Quivira Streets in Johnson County. For the tax year 1989, the Johnson County Appraiser's Office classified

the property as "vacant" land and assessed a property tax based on its fair market value of $288,200. Later, the Johnson County Board of Equalization approved the classification and assessment. Respondent subsequently appealed the decision to BOTA. Ultimately, BOTA's final order determined the value of the property should be set according to its agricultural use value, $350.

The petitioners requested and BOTA granted a rehearing. BOTA subsequently issued an order affirming its previous decision.

The district court, after reviewing the record and hearing arguments from counsel, held there was substantial competent evidence to support the BOTA decision and BOTA's decision was not arbitrary or capricious.

## SCOPE OF REVIEW

"[O]rders, of BOTA are subject to judicial review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* [Citation omitted.] Under that Act, the court's scope of review is controlled by K.S.A. 77-621, which this court recognizes as somewhat broader than the traditional three-pronged scope of review set forth in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968)." *City of Liberal v. Seward County*, 247 Kan. 609, 611, 802 P.2d 568 (1990).

"Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases." K.S.A. 77-623. Therefore, when reviewing decisions of the district court which reviewed a decision of BOTA, the scope of appellate review is the same as in other civil cases.

"This court must view the evidence in the light most favorable to the prevailing party. If the district court's findings of fact are supported by substantial competent evidence, this court is bound by those findings. We have jurisdiction to review all questions of law. [Citations omitted.]" *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 828 P.2d 933 (1992).

BOTA exists to decide matters of this nature, and therefore its decision should be given great credence when it is acting within its area of expertise. *In re Tax Appeal of Director of Property Valuation*, 14 Kan. App. 2d 348, 353, 791 P.2d 1338 (1989), *rev. denied* 246 Kan. 767 (1990). "If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body on questions of law is not conclusive, and, while persuasive, is not binding on the courts."

*Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,*
233 Kan. 801, 810, 667 P.2d 306 (1983).

## BOTA'S INTERPRETATION
### K.S.A. 1992 Supp. 79-1476 reads in relevant part:

"The director of property valuation is hereby directed and empowered to administer and supervise a statewide program of reappraisal of all real property located within the state. . . .

. . . .

"Valuations shall be established for each parcel of real property at its fair market value in money in accordance with the provisions of K.S.A. 79-503a, and amendments thereto.

"In addition thereto valuations shall be established for each parcel of land devoted to agricultural use upon the basis of the agricultural income or productivity attributable to the inherent capabilities of such land in its current usage under a degree of management reflecting median production levels in the manner hereinafter provided. . . .

. . . .

"For the purpose of the foregoing provisions of this section the phrase 'land devoted to agricultural use' shall mean and include land, regardless of whether it is located in the unincorporated area of the county or within the corporate limits of a city, which is devoted to the production of plants, animals or horticultural products, including but not limited to: Forages; grains and feed crops; . . . . Land devoted to agricultural use shall not include those lands which are used for recreational purposes, suburban residential acreages, rural home sites or farm home sites and yard plots whose primary function is for residential or recreational purposes' even though such properties may produce or maintain some of those plants or animals listed in the foregoing definition."

Petitioners contend the phrase "devoted to agricultural use" means the agricultural use must be undertaken seriously, with purpose, and in good faith and argues that if the standard for agricultural use was the mere planting of a crop shortly before assessment date or the occasional grazing of livestock, the legislature would not have included the phrase "devoted to" in the statute.

BOTA ultimately made the following findings of fact and conclusions of law:

### Findings of Fact
- The parcel of ground contains 2.26 acres, and there are no buildings or improvements on the property.

- In May of 1988, the taxpayer hired James Neighbors to work the land and develop a stand of fescue. Neighbors harrowed and seeded the ground. The grass selected is not normally used for lawns or parks. The taxpayer leased the ground to Foote Farms to hay the grass. Due to a drought, there was not sufficient grass to hay in 1988, and no income was produced for the owner. Foote Farms was to remove the hay and use it for their own purposes.
- The land is located within the corporate limits of a city. It adjoins a residential housing subdivision. The land across the street consists of pasture and a soybean field and is classified as agricultural land.
- The taxpayer maintains this operation is not a hobby but an intricate step in his operation. The taxpayer holds other unimproved land and maintains a farming operation until the area is ready for development.
- The land was used for no other purpose besides hay production. The land was not used for residential or recreational purposes. The land was not used as a garden for the taxpayer's personal enjoyment and recreation. The taypayer's land is fenced off from the residential housing subdivision. The land was not used or associated with a rural homesite or a farm homesite. The County did not present evidence of any use other than the use explained by the taxpayer.

### Conclusions of Law

- For land to be appraised according to its use value, it must be devoted to agricultural use. The phrase "devoted to agricultural use" is defined in K.S.A. 1992 Supp. 79-1476.
- K.S.A. 1992 Supp. 79-1476 provides that land devoted to agricultural use can be located inside or outside the corporate limits of a city. The fact that the taxpayer's land is inside the city limits is irrelevant, especially in light of the fact that property across the street is classified as agricultural land.
- There is no minimum acreage requirement in the statute, nor is there a requirement that profit be made from the property. The fact that the parcel contains 2.26 acres is irrelevant, as is the fact that the taxpayer is not a farmer by

occupation. The statute does not make a distinction on the basis of ownership.

- Lands which are used for recreational or residential purposes are excluded by the statute, but the County failed to produce any evidence that the property was being used for either purpose. Neither did the County produce evidence that the land was used as a garden or yard plot. The type of grass planted by the taxpayer is not the type of grass traditionally grown for residential or lawn purposes. There is no statutory provision prohibiting a developer from buying land and using it for agricultural purposes until it can be developed.
- The test under K.S.A. 1992 Supp. 79-1476 was found to be whether the land is being devoted or set apart for a specific use—that use being agricultural. The test is not what use is being made of the surrounding properties, but what use the taxpayer is making of the land. The taxpayer has specifically set aside this property for the production of hay. The county did not produce any evidence to controvert this fact. Although the taxpayer's land may be prime commercial property or prime residential property in the future, it is presently being used and devoted to agricultural purposes.
- There is no statutory prohibition against the landowner planting grass in order to obtain a more favorable classification.
- The Board, therefore, concluded that the taxpayer's land was being devoted to agricultural use and that it should be classified accordingly.

Upon rehearing, the BOTA order stated in relevant part,

"5. The Board finds that in legal interpretation, the plain language of the law should be used. . . .

"6. While it is likely that the Applicant will use the subject property for whatever profitable uses [that] may come along, the same could be said of a more traditional farmer as well. The Board finds that the highest and best use of the subject property is not the basis for determining the correct classification of the subject property. If [the] highest and best use were the benchmark, those with property in [the] path of development could find themselves taxed out of existence.

"7. The Kansas citizens have spoken directly, in the Constitution, and through their representatives in the Kansas Legislature. The *vox populi* have made 'land devoted to agricultural use' the standard of measurement. The evidence here indicates that the fescue crop has been sown with the intention

of harvesting it for hay. Although the land may have a higher and better use, the Board finds that it is currently devoted to agricultural use."

Two members of BOTA dissented from the final order and the order on rehearing, stating BOTA should look not only at the physical use of the property but also consider the intangible uses, including holding the property for investment. The dissenters further stated that the phrase "devoted to agricultural purposes" means the land should be set aside and consecrated to agricultural use to the exclusion of other uses. Additionally, the dissenters suggested that the following factors be used to determine whether a piece of property is "devoted to agricultural purposes."

* The size of the parcel.
* Economic viability of agricultural use.
* Evidence of subdivision plans for non-agricultural uses.
* Current physical use of the property.
* Other feasible uses of the property.
* Characteristics of the surrounding neighborhood.
* Prior uses of the property.

Petitioners argue this court should require the consideration of a similar list of factors before a parcel can be classified as agricultural.

We are convinced the interpretation of the phrase "devoted to agricultural use" is a matter of first impression. "The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature." *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, Syl. ¶ 4, 518 P.2d 453 (1974). Because the resolution of this issue is a question of law, this court's scope of review is unlimited. *In re Tax Protest of Spangles, Inc.*, 17 Kan. App. 2d 335, Syl. ¶ 1, 835 P.2d 699 (1992).

" 'It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained.' " *Martindale v. Tenny*, 250 Kan. 621, 626, 829 P.2d 561 (1992). " 'Where a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be. Thus, no room is left for statutory construction.' " *In re Mary P.*, 237 Kan. 456, 459, 701 P.2d 681 (1985). Further, "[t]ax statutes are penal, and thus

must be strictly construed in favor of the taxpayer." *In re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986).

Here, the legislature has provided a definition for the phrase "land devoted to agricultural use." K.S.A. 1992 Supp. 79-1476 provides that land devoted to agricultural use means land devoted to the production of plants, animals, or horticultural products.

The statute then provides a nonexclusive list of examples of plants, animals, and horticultural products. Next, lands put to such uses are deemed devoted to agricultural use regardless of whether they are located within or without the corporate city limits.

Finally, the statute excludes from the definition of "land devoted to agricultural use" those properties that are used for recreational purposes, rural or farm homesites, suburban residential acreages, and yard plots whose primary purpose is for recreational or residential purposes. Such acreage is excluded even though it may produce plants or animals previously listed in the statute.

As we understand, petitioners seek to impose an additional limitation on what acreage may be classified as agricultural by its construction of the term "devoted." However, in this statute, the legislature defined the term "land devoted to agricultural use." If the legislature had meant for the phrase to include only those lands which had in the past been used for agriculture, were currently used for agriculture, and were intended to remain exclusively used for agricultural, the legislature could easily have drafted the statute to that purpose.

The language of the statute clearly states that land inside and outside the corporate city limits may be "devoted to agricultural use." Therefore, the proximity to developed areas would similarly be irrelevant.

Additionally, petitioners seek to add current economic viability as well as alternative uses for the property as factors to be used when determining whether the land is "devoted to" agricultural use. Arguably, if this standard were adopted, few family farms would survive the classification process. Much of the farm land located on the outskirts of Kansas cities, whether or not those farms have existed for long periods or have been recently established, could be developed for more profitable uses than farming.

However, the statute does not establish this as a factor in the definition of "land devoted to agricultural use."

An often quoted phrase of statutory construction is *expressio unius est exclusio alterius, i.e.,* the inclusion of one thing implies the exclusion of another. *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977). The legislature has defined the phrase "land devoted to agricultural use" in broad terms and in the absence of evidence of a contrary intent, this court will not impose a more narrow definition. Pursuant to the statute, if the land is used in the production of one of the items listed and is not used for rural or farm homesites, or suburban residential or recreational purposes, the land is properly classified as agricultural.

Petitioner further argues that BOTA's interpretation of the statute violates Article 11, § 1(b) of the Kansas Constitution. Section 1(b) reads in relevant part,

"(1) The provisions of this subsection (b) shall govern the assessment and taxation of property on and after January 1, 1989, and each year thereafter. Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation . . . . Property shall be classified into the following classes . . . .

"(B) Land devoted to agricultural use which shall be valued upon the basis of its agricultural income or agricultural productivity pursuant to section 12 of article 11 of the constitution . . . ."

Petitioners properly admit it is constitutionally permissible to classify property and tax it at different rates. However, petitioners contend that the federal and state constitutions require that there be a rational basis for different classifications and assessment rates. Petitioners claim that BOTA's application of the statute does not have a substantial relation to the objective of the legislation and therefore violates the constitutional provisions that property valuation be uniform and equal. Petitioners further claim that the intention of the agricultural use classification was to protect farmers on the fringes of urban development. However, petitioners fail to elucidate how BOTA's interpretation fails to achieve this end.

Petitioners further contend that BOTA's application of the statute would violate the uniform and equal mandate of the constitution because other landowners in Johnson County who have

fescue growing on their property, but have not sought to have their land classified as agricultural, will carry an unequal tax burden. However, petitioners failed to produce evidence at the administrative level or in the district court which shows there are other similarly situated properties that are being treated differently. Without evidence of other landowners who are being treated differently pursuant to the same statute, this argument fails. If petitioners fear harsh or inequitable results under the statutory scheme, petitioners' recourse is to the legislative body if the courts have determined the provisions constitutionally valid. See *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. 404, 413, 636 P.2d 760 (1981).

Here, petitioners do not dispute that Thomas Smith planted fescue and brome on the property. Neither do petitioners dispute that Thomas Smith entered into an agreement with others to "hay" the grass and control noxious weeds. In fact, petitioners apparently concede that the land is being used for agricultural purposes. Petitioners' chief complaint is that the owner is not "seriously and in good faith" devoting the property to agricultural use and is in fact a developer utilizing a loophole in the statute to keep his property taxes down until the property is ripe for development. This in turn results in a decrease in revenue for the local taxing jurisdiction.

Our difficulty with the petitioners' argument is, pursuant to the clear language of the statute, it makes no difference what intentions the owner has for the property in the future or what his or her motivations are for establishing an agricultural use.

We agree with petitioners that here the district court did not utilize the correct standard of review. Nevertheless, based upon our discussion above, the district court's decision is correct even if for the wrong reason. "The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." *Sutter Bros. Constr. Co. v. City of Leavenworth*, 238 Kan. 85, Syl. ¶ 4, 708 P.2d 190 (1985).

Affirmed.