(9 P.3d 1281)

No. 83,418

In the Matter of the Appeal of BROCE CONSTRUCTION CO., INC., BROCE-O'DELL CONCRETE PRODUCTS, INC., and BROCE MANUFACTURING CO., INC., FROM AN ORDER OF THE DIVISION OF TAXATION ON ASSESSMENT OF CORPORATE INCOME TAX.

Opinion filed August 25, 2000.

*James Bartle*, of Legal Services Bureau, for appellant Kansas Department of Revenue.

*Carol B. Bonebrake*, of Cosgrove, Webb & Oman, of Topeka, for appellees.

Before GREEN, P.J., GERNON, J., and PHILIP C. VIEUX, District Judge, assigned.

GREEN, J.: This is an appeal by the Kansas Department of Revenue (the Department) from an order of the Kansas Board of Tax Appeals (BOTA) which denied conversion of Broce Construction Company, Inc.'s (Broce Kansas) corporate income tax returns for tax years ending (TYE) 1985 through 1988 (the audit period) from single entity corporate tax returns to combined report formula apportionment tax returns. The denial of the assessment was based upon a determination by BOTA that Broce Kansas together with two Oklahoma corporations, Broce Construction Company of Oklahoma, Inc. (Broce Oklahoma) and Woodward Asphalt, Inc. (Woodward), were not conducting a unitary business during the audit period. We reverse and remand with directions.

On December 28, 1989, the Department issued two notices of assessment of additional corporate income tax and one notice of refund for TYE 1985 through 1988 to three Kansas corporations owned by Ray C. Broce. The notices of assessment were issued to Broce Kansas and Broce-O'Dell Concrete Products, Inc. (Broce-O'Dell); the notice of refund was issued to Broce Manufacturing Company, Inc. (Broce Manufacturing).

These notices were based upon the Department's determination that Broce Kansas, Broce-O'Dell, and Broce Manufacturing (collectively referred to as the Kansas taxpayers) together with Broce Oklahoma and Woodward were engaged in a unitary business. Woodward was only included in the unitary analysis for TYE 1988, the tax year in which the company was acquired by Broce Oklahoma.

Because the Department determined that these five companies were a unitary business, the Kansas taxpayers' state corporate income tax returns should have been filed using the combined report formula apportionment method rather than the single entity method. Using the combined report formula apportionment method, the Department combined the Kansas taxpayers' income with Woodward's income for TYE 1988 and Broce Oklahoma's income for the two years before the audit period as well as the audit period. When Broce Kansas' income for TYE 1983 and 1984 was recomputed using the combined report formula apportionment method, the company did not have a net operating loss

(NOL) in either year. For this reason, the Department did not allow the NOLs shown on the single entity returns for TYE 1983 and 1984 to be carried forward and claimed as deductions in TYE 1985 through 1988. After recalculation, the Department determined that the Kansas taxpayers' total tax and interest due was over $300,000.

The Kansas taxpayers protested the Department's notices by filing a petition with the Director of Taxation. A designee of the Director of Taxation upheld the Department's determination of unity. The Kansas taxpayers then filed a petition for review with the Director, which was denied.

Under K.S.A. 74-2437, the Kansas taxpayers appealed the Director's order to BOTA, requesting a hearing de novo. The Kansas taxpayers moved for partial summary judgment, arguing that the Department was barred from disallowing Broce Kansas' NOL deductions because the statute of limitations for TYE 1983 and 1984 (the years in which the NOLs originated) had expired. BOTA found that K.S.A. 79-3230 prohibited the Department in 1989 from adjusting the closed year TYE 1983 and 1984 returns.

Before presenting testimony, the Department agreed to not include Broce-O'Dell and Broce Manufacturing in the unitary analysis. As a result, the issue presented to BOTA was whether Broce Kansas, Broce Oklahoma, and Woodward (collectively referred to as the taxpayers) conducted a unitary business during the audit period.

After hearing testimony, BOTA reversed the Director's finding of unity and abated the Department's assessment notices. BOTA rationalized that "while there are factors linking these companies, they are insufficient to show that the operation of Broce of Kansas are dependent upon and contribute to the operations of Broce of Oklahoma and Woodward."

## Unitary Business

The Department's first argument on appeal is that BOTA erred in determining that Broce Kansas, Broce Oklahoma, and Woodward were not engaged in a unitary business during the audit period. "BOTA orders are subject to judicial review pursuant to the

Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq." In re Tax Appeal of Derby Refining Co.,* 17 Kan. App. 2d 377, 380, 838 P.2d 354 (1992), *rev. denied* 252 Kan. 1092 (1993). K.S.A. 77-621 provides:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial *when viewed in light of the record as a whole,* which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." (Emphasis added.)

"Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *In re Tax Appeal of Collingwood Grain, Inc.,* 257 Kan. 237, Syl. ¶ 2, 891 P.2d 422 (1995).

As to questions of law, BOTA exists to decide tax matters; therefore, its decisions should be given due consideration when it is acting within its area of expertise. Nevertheless, " 'the determination of an administrative body on questions of law is not conclusive, and, while persuasive, is not binding on the courts.' " *Board of Johnson County Comm'rs v. Smith,* 18 Kan. App. 2d 662, 664-65, 857 P.2d 1386 (1993) (quoting *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 810, 667 P.2d 306 [1983]). The appellate courts have unlimited review of questions of law. *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991); *Angleton v. Starkan, Inc.,* 250 Kan. 711, 716, 828 P.2d 933 (1992).

We further should note that as the appellant, the Department has the burden of proving that BOTA's actions were in error. K.S.A. 77-621(a)(1). The Department claims that it is entitled to relief because (1) BOTA erroneously interpreted and applied the law; (2) BOTA's action was based on determinations of fact that are not supported by the record as a whole; and (3) BOTA's action was unreasonable, arbitrary, or capricious. (Citing K.S.A. 77-621[c][4], [7], and [8].)

Our Supreme Court has stated on several occasions that whether a multistate business is separate or unitary depends upon the manner in which the business is conducted. "The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such a relationship, the business is unitary." *In re Tax Appeal of A.M. Castle & Co.*, 245 Kan. 739, Syl. ¶ 3, 783 P.2d 1296 (1989); *Pioneer Container Corp. v. Beshears*, 235 Kan. 745, Syl. ¶ 4, 684 P.2d 396 (1984); *Crawford Manufacturing Co. v. State Comm. of Revenue and Taxation*, 180 Kan. 352, Syl. ¶ 2, 304 P.2d 504 (1956). This test is referred to as the dependency or contribution test. *Castle*, 245 Kan. at 743.

"In determining whether two or more business entities actually constitute a unitary business for state income taxation purposes, the application of the . . . [test] is much more difficult than the definition of the test itself." 245 Kan. at 744. The Department has promulgated K.A.R. 92-12-72 to assist in determining whether the activities of a corporation or group of corporations constitute a single trade or business. In K.A.R. 92-12-72, it is recognized that "[t]he determination of whether the activities of the taxpayer constitute a single trade or business or more than one (1) trade or business will turn on the facts in each case." Although each case must be determined on its own facts, there is "a strong presumption that the activities of the taxpayer constitute a single trade or business" when:

"(a) . . . all of its activities are in the same general line.

"(b) A taxpayer is almost always engaged in a single trade or business when its various divisions or segments are engaged in different steps in a large, vertically structured enterprise.

"(c) A taxpayer who might otherwise be considered as engaging in more than one (1) trade or business is properly considered as engaged in one (1) trade or business when there is strong centralized management, coupled with the existence of centralized departments for such functions as financing, advertising, research or purchasing. Thus, some conglomerates may properly be considered as engaged in only one (1) trade or business when the central executive officers are normally involved in the operation of the various divisions and there are centralized offices which perform for the divisions the normal matters which a truly independent

business would perform for itself, such as accounting, personnel, insurance, legal, purchasing, advertising, or financing." K.A.R. 92-12-72.

We now turn to the facts of this case and consideration of the controlling issue of whether substantial evidence supports BOTA's determination that Broce Kansas, Broce Oklahoma, and Woodward were not operated as a unitary business during the audit period.

Broce Kansas is a Kansas corporation with its principal place of business in Dodge City, Kansas, and does business as an asphalt paving and resurfacing contractor. Broce Kansas is qualified to bid on state and federal highway construction work in Kansas. At all times relevant for purposes of this appeal, Ray Broce was Broce Kansas' majority shareholder, owning 86% of its shares. In 1982, Ray Broce and Broce Kansas pled guilty to two federal antitrust indictments charging them with participating in a conspiracy to rig bids submitted to the State of Kansas on various highway construction projects. *United States v. Broce*, 753 F.2d 811, 812 (10th Cir. 1985). Broce Kansas was fined $1.5 million for the antitrust violations. 753 F.2d. at 812. Moreover, the State of Kansas brought a claim for civil damages against Broce Kansas for overcharges on various highway construction projects. Broce Kansas agreed to settle this claim for $1,785,000.

As a result of the antitrust convictions, the Federal Highway Administration suspended Broce Kansas from bidding on highway construction projects for two years. The period of suspension lasted from April 26, 1982, until April 25, 1984. During the suspension, Broce Kansas was allowed to finish jobs in progress but could not bid on new contracts.

Broce Oklahoma, an Oklahoma corporation with its principal place of business in Woodward, Oklahoma, is a wholly owned subsidiary of Broce Kansas. Like Broce Kansas, Broce Oklahoma is an asphalt paving and resurfacing contractor, but is only authorized to do business in Oklahoma. Although Broce Oklahoma was not charged with federal antitrust violations, the company was nevertheless barred from bidding on construction jobs during a portion of the audit period.

In 1984, certain officers and directors of Broce Oklahoma and the wife of an officer and director of Broce Kansas formed Woodward, an asphalt paving and resurfacing contractor. Woodward was an Oklahoma corporation with its principal place of business in Woodward, Oklahoma. From 1984 until 1987 when Woodward was acquired by Broce Oklahoma and operated as a wholly owned subsidiary, Woodward obtained the equipment necessary to perform asphalt paving and resurfacing projects by leasing it from Broce Oklahoma. Some of the equipment was leased by Broce Oklahoma from Broce Kansas for the purpose of subleasing it to Woodward. The lease rates paid by Broce Oklahoma and Woodward were less than the rates these companies would have paid in the open market.

The lease arrangements furnished a way for Broce Kansas to make use of its idle equipment and generate income during the bidding suspension. In fact, during TYE 1985 through 1988, Broce Oklahoma paid Broce Kansas nearly $1.5 million in equipment rental. After Broce Kansas' bidding suspension was lifted, Broce Kansas rented equipment from Broce Oklahoma. The two companies essentially shared equipment in performing their respective highway construction projects.

As indicated above, Broce Kansas, Broce Oklahoma, and Woodward were in the same general line of business: asphalt paving and resurfacing. Although Broce Kansas and Broce Oklahoma were prohibited from bidding on new jobs during a portion of the audit period, both companies could complete construction jobs previously awarded. Moreover, although Broce Kansas and Broce Oklahoma generated income during the suspensions by leasing idle equipment, the equipment leased was of the type used for asphalt paving and resurfacing. Because the leases and the construction work both involved asphalt paving and resurfacing, these activities were in the same general line of business. As a result, because the taxpayers' business activities were all in the general line of asphalt paving and resurfacing, the taxpayers engaged in a unitary business during the audit period. See K.A.R. 92-12-72(a).

Moreover, because Woodward is owned by Broce Oklahoma and Broce Oklahoma is a wholly owned subsidiary of Broce Kansas,

Ray Broce effectively controlled all three companies through his ownership of 86% of Broce Kansas' stock. Ray Broce was the patriarch of the family business and made the major decisions for these companies. The presence of a single individual who made the major business decisions for what was essentially a "family operation" was cited as evidence of strong centralized management in *Mole-Richardson Co. v. Franchise Tax Bd.*, 220 Cal. App. 3d 889, 899, 269 Cal. Rptr. 662 (1990). Ray Broce's control of all three companies significantly contributed to the taxpayers' strong central management. See K.A.R. 92-12-72(c).

Furthermore, during the audit period, all but one of the directors of Broce Kansas was also a director of Broce Oklahoma. Many of the overlapping officers and directors of these two companies were family members of Ray Broce. Ray Broce was CEO and director of both Broce Kansas and Broce Oklahoma. In addition, Woodward was formed by two officers and directors of Broce Oklahoma and the wife of an officer and director of Broce Kansas. An examination of the taxpayers' corporate records reveals that during the audit period, no actual board of directors' meetings for Broce Kansas or Broce Oklahoma took place.

Moreover, these companies benefitted from intercompany financing and loan guarantees. For example, certificates of deposit owned by Broce Kansas, Broce Oklahoma, and a wholly owned subsidiary of Broce Oklahoma totaling up to $1.5 million were pledged to secure payment of both the criminal fine and civil damages owed by Broce Kansas. Moreover, Broce Oklahoma pledged its assets as security for the civil damages owed by Broce Kansas. Broce Oklahoma's willingness to encumber its assets contradicts the taxpayers' argument that these companies were separate and unrelated.

In addition to beneficial financial transactions, the taxpayers also participated in intercompany exchanges of capital assets through the leasing of construction equipment. Significantly, these leases were informal verbal agreements executed at below market rates. Not only were Broce Oklahoma and Woodward able to lease equipment at a discount, but by leasing the equipment the companies avoided large capital expenditures. Moreover, the quantity of the

intercompany leases was substantial. It is unlikely that such a large volume of equipment would have been readily available on the open market from a single source of supply, particularly at times when construction activity was at its peak and demand for equipment was high. In addition, the companies were permitted to repair the leased equipment at their own facilities which decreased job delays due to equipment downtime. By pooling their construction equipment, the taxpayers were able to perform more construction work at a lower cost than if they were separate and distinct businesses that dealt with each other at arm's length.

In May 1985, Broce Oklahoma authorized a $750 per share dividend to its sole shareholder Broce Kansas. This action resulted in a transfer of over $1 million from Broce Oklahoma to Broce Kansas. It was highly unusual for Broce Oklahoma to take this action since the company did not typically issue dividends. The dividend, however, was issued when Broce Kansas was in need of cash. Moreover, the individuals who decided to issue the dividend were directors of both Broce Kansas and Broce Oklahoma. When viewed from this perspective, it appears that the dividend was simply a vehicle to transfer liquid assets from the subsidiary to the parent company.

In the area of employment, many former Broce Oklahoma employees were transferred to Woodward during Broce Oklahoma's bidding suspension. These employees performed the same functions for Woodward that they had previously performed for Broce Oklahoma. After Broce Oklahoma acquired Woodward, many of these employees left Woodward and returned to Broce Oklahoma.

Moreover, the taxpayers also achieved efficiencies from certain common administrative functions. For example, BOTA found that all three companies utilized the same law firm and the same insurance carrier. In addition, Broce Kansas and Broce Oklahoma used the same accounting firm for auditing and filing income tax. These functions are specifically listed in K.A.R. 92-12-72(c) as relevant to the unitary inquiry.

While additional facts evidencing the interrelationship of Broce Kansas, Broce Oklahoma, and Woodward are contained in the record, we believe the foregoing is sufficient to demonstrate that the

taxpayers constituted a unitary business under the dependency or contribution test. It is evident that Broce Kansas' operations met both prongs of the test. Broce Kansas' functions were dependent upon and contributed to the operations of Broce Oklahoma and Woodward during the audit period.

We conclude from a review of the entire record that the record does not support BOTA's conclusion that the operations of Broce Kansas, Broce Oklahoma, and Woodward did not constitute a unitary business during the audit period. To the contrary, the overwhelming substantial evidence leads to the conclusion that the taxpayers constituted a unitary business. As a result, we hold that BOTA's decision is not supported by substantial evidence.

*Denial of NOL Carryforwards*

The Department also argues that BOTA erred in concluding that K.S.A. 79-3230 bars the Department from disallowing the NOL carryforward deductions claimed by Broce Kansas during the audit period. Because resolution of this issue requires the interpretation of a statute, it is a question of law subject to unlimited review. See *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

The Department denied the NOL carryforward deductions claimed by Broce Kansas in TYE 1985, 1987, and 1988 based on losses that arose in TYE 1983 and 1984 under the single entity method of filing. This denial was based on the Department's determination that Broce Kansas was unitary with Ray Broce's other companies in TYE 1983 and 1984 and should have been filing on a combined basis in those years. When Broce Kansas' income for TYE 1983 and 1984 was recomputed using the combined report method, the company did not show a loss in either year. For this reason, the Department did not allow the NOLs shown on the single entity returns for those earlier years to be carried forward and claimed as deductions during the audit period.

The Director of Taxation upheld the Department's denial of Broce Kansas' NOL deductions that originated in TYE 1983 and 1984. The Director rationalized:

"K.S.A. 79-3230(a) places a limitation only on the Department's authority to *assess* income tax in a particular year. Here, the Department assessed tax only for TYE 1985 through 1988 and it is uncontroverted that the assessment issued for those years was timely. The Taxpayers' complaint is not that the Department *assessed* tax for TYE 1983 and 1984 but that it *adjusted* Broce [Kansas'] income for those years to effectively eliminate any NOLs that could have been carried forward. Nothing in K.S.A. 79-3230 prohibits the action taken by the Department. As a practical matter, the Department merely disallowed a deduction claimed in years that concededly remained open under the applicable statute of limitations. [Citations omitted.]"

BOTA, however, disagreed with the Director and granted the taxpayers' motion for summary judgment on the basis that the Department's adjustment of Broce Kansas' income in TYE 1983 and 1984 was barred by the statute of limitations.

On appeal, the Department concedes that TYE 1983 and 1984 were closed tax years at the time of the assessments. Nevertheless, the Department contends that K.S.A. 79-3230(a) does not prohibit the denial of NOL deductions in open tax years even if the NOLs originated in closed tax years.

The version of K.S.A. 79-3230(a) in effect during the tax years at issue provided:

"The amount of income taxes imposed by this act shall be *assessed* within four years after the return was filed or the tax as shown to be due on the return was paid, whichever is the later date, and no proceedings in court for the collection of such taxes shall be begun after the expiration of such period." (Emphasis added.) K.S.A. 79-3230(a)(Ensley 1984).

On appeal, the parties dispute the meaning of the term "assessed" as used in K.S.A. 79-3230(a). The Department suggests that the legislature used the term "assessed" to mean the levying of additional tax. Broce Kansas, on the other hand, insists that the legislature intended the term to mean the process whereby additional tax liability is imposed.

The definition of the term "assess" as used in a Kansas taxation statute was subject to prior debate in *Commercial National Bank v. Board of County Commissioners*, 201 Kan. 280, 283-85, 440 P.2d 634 (1968). The *Commercial National* court noted that while "[t]he terms 'taxation' and 'assessment' are often used interchangeably as denoting the taxing process in its entirety," the term "assessment"

is also subject to the more narrow definition of "the listing and valuing of property for taxation." 201 Kan. 280, Syl. ¶¶ 2, 3. The court went on to note that when "assessment" is used in the more narrow sense, it "is but one of the three steps embraced in the entire process of taxing property, the other two steps being the levy of tax against the property and the collection thereof." 201 Kan. 280, Syl. ¶ 3.

We find that the Kansas Legislature used the term "assessed" in K.S.A. 79-3230(a) to denote the taxing process in its entirety. The legislature's use of the phrase "amount of income taxes imposed by this act" shows that the legislature intended for the 4-year statute of limitations to apply only to the imposition of income tax. Moreover, the legislature's provision that proceedings for the collection of such taxes shall be initiated before the expiration of the statute of limitations also supports this court's determination that the broad definition of the term "assessed" was intended by the legislature.

We find that the statute of limitations found at K.S.A. 79-3230(a) applies only to the imposition of income tax and does not prohibit the Department from recalculating income tax for closed tax years for the purpose of determining tax liability for open tax years. We reverse BOTA's decision that the Department was barred from denying the NOL deductions.

Because BOTA did not permit the Department to address the issue of unity for the years before the audit period, the NOL issue remains unresolved. As a result, we remand this case to BOTA to address whether the Director correctly determined that the taxpayers' businesses were unitary in TYE 1983 and 1984. If BOTA agrees with the Director's determination of unity, then BOTA must recalculate Broce Kansas' income or loss in TYE 1983 and 1984 under the combined report formula. After recalculation, if Broce Kansas no longer has NOLs in TYE 1983 and 1984, then BOTA must deny the NOL carryforward deductions claimed by Broce Kansas during the audit period.

*Procedural Issues*

We must also address the Department's arguments regarding BOTA's failure to clearly state which party had the burden of proof

and BOTA's decision to require the Department to present its evidence first.

Before the hearing at BOTA, the taxpayers moved to determine the burden of proof. The taxpayers argued that the Department had the burden under K.S.A. 79-3288(e) to show that the companies in question were unitary. K.S.A. 79-3288(e) provides:

"[I]n the case of two or more businesses . . . owned or controlled directly or indirectly by the same interests, which contrive through inter-company transactions to evade taxes imposed under this act, the secretary of revenue may distribute or allocate the gross income and deductions between or among such businesses or may require returns on a consolidated basis. The burden of proof of any contrivance to evade taxes under this act shall rest upon the director of taxation or secretary of revenue."

The Department responded by arguing that K.S.A. 79-3288(e) was inapplicable because the Department is authorized to require a combined report under K.S.A. 79-32,141, not K.S.A. 79-3288(e). K.S.A. 79-32,141 provides that "[t]he director may allocate gross income, deductions, credits, or allowances between two or more . . . businesses . . . owned or controlled directly or indirectly by the same interests, if the director determines such allocation is necessary to prevent evasion of taxes or to clearly reflect income of the . . . businesses." Significantly, K.S.A. 79-32,141 does not contain language indicating which party has the burden of proof. Unfortunately, BOTA did not clearly resolve the burden of proof issue when it read the following statement into the record:

"It is the intent of the board to provide the parties to this hearing a realm for which all the evidence can be presented in a logical and fair manner. To do this the board finds that inadvisable for the presentation of the evidence in a bifurcated manner.

"The board finds that the department should go forward with its evidence on whether or not the taxpayers were engaged in a unitary business. When the department is rested the taxpayers will present their evidence. All parties will be allowed to present rebuttal testimony. The board in rendering its decision will invoke all legal presumptions."

Although this burden of proof issue has been argued at length before BOTA and our Supreme Court on several occasions, both tribunals have not addressed this troublesome issue. See, *e.g.*, *In re Tax Appeal of A.M. Castle & Co.*, 245 Kan. 739, 748, 783 P.2d

1296 (1989) ("In view of the decision reached, we need not address the procedural and other issues asserted by the Department.").

To resolve this issue, we must first determine whether K.S.A. 79-3288(e) or K.S.A. 79-32,141 applies to unity cases. Our Supreme Court has held that the Department "is authorized by K.S.A. 79-32,141 to require the combined report method of allocation of income and expenses when it is determined that two or more corporations are engaged in a multi-state unitary business." *Pioneer Container Corp. v. Beshears*, 235 Kan. 745, Syl. ¶ 6, 684 P.2d 396 (1984); see *Castle*, 245 Kan. at 741-42.

The *Pioneer* court's finding that K.S.A. 79-32,141 should be used when determining whether businesses are unitary is consistent with our rule of statutory construction that older statutes are subordinate to new enactments. See *Jones v. Continental Can Co.*, 260 Kan. 547, 556, 920 P.2d 939 (1996). K.S.A. 79-3288(e) was added to 79-3288 by the 1965 Legislature. See L. 1965, ch. 526, § 1. K.S.A. 79-32,141, however, was not enacted until 1967. See L. 1967, ch. 497, § 34. Because K.S.A. 79-32,141 is the most recent statute addressing the allocation of gross income and deductions between two or more businesses, we determine that statute controls.

Unlike K.S.A. 79-3288(e), K.S.A. 79-32,141 does not specifically state which party has the burden of proof. Moreover, our Supreme Court has long held that "the tax found by the tax commission to be due is presumed to be valid [and] the taxpayer has the burden of showing its invalidity." *Nutrena Mills, Inc. v. State Tax Comm.*, 150 Kan. 68, 75, 91 P.2d 15 (1939) (citing *United States v. Reitmeyer*, 11 F.2d 648 [E.D. La. 1926]). Similarly, *Crawford* noted:

"The order of the [Department] carries with it a presumption of validity which continues until [the taxpayer] establishes that the method of allocation adopted is inherently arbitrary, or that its application to [the taxpayer] produces an unreasonable result. . . . The burden was upon [the taxpayer] to show . . . that the factor formula method ordered by the [Department] to be applied, does not 'clearly reflect' a just and equitable allocation of net income to Kansas." 180 Kan. at 364.

Rather than ambiguously stating that it would "invoke all legal presumptions," BOTA should have more clearly stated that it would

presume the Department's determination of unity was correct and the taxpayers had the burden of proving otherwise.

The Department also argues that BOTA erred in requiring it to present its evidence first. K.A.R. 94-2-10(g) originally provided: "At hearings upon appeals or applications, the applicant or the appellant shall open and close." However, K.A.R. 94-2-10 was amended before the BOTA hearing in the instant case. See K.A.R. 94-2-10 (1999 Supp.). As amended, the regulation no longer requires the appellant to present its evidence first. Instead, K.A.R. 94-2-10 (1999 Supp.) is silent as to the order of the presentation of the evidence. As a result, BOTA did not err in requiring the Department to present its evidence first, but BOTA was nevertheless required to apply the presumptions previously described.

We find that BOTA erred in failing to clearly state and apply the applicable legal presumptions. On remand, BOTA is required to presume that the Department's assessment of tax against the taxpayers was proper.

Reversed and remanded with directions.