(269 P.3d 876)
No. 104,161

IN THE MATTER OF THE PROTESTS OF OAKHILL LAND COMPANY, *et al., Appellants/Cross-Appellees.*

—

Opinion filed January 27, 2012.

*Linda Terrill* and *Darcy Demetre Hill*, of Neill, Terrill & Embree, P.A., of Leawood, for appellants/cross-appellees.

*Ryan Carpenter*, assistant counsel, of Unified Government of Wyandotte County/Kansas City, Kansas, for appellee/cross-appellant.

Before LEBEN, P.J., GREEN and MARQUARDT, JJ.

LEBEN, J.: Three landowners dispute the reclassification of their real estate from agricultural use to vacant, made by Wyandotte County and upheld by the Court of Tax Appeals, which resulted in an increase in the landowners' property-tax assessment. But we may not overturn an administrative-agency decision when it is supported by substantial evidence, even though there may be evidence to the contrary. The Court of Tax Appeals' decision upholding the classification was based on substantial evidence, and we therefore must affirm it.

The Unified Government of Wyandotte County/Kansas City, Kansas, separately cross-appeals the Court of Tax Appeals' decision that the county could not revise its 2006 appraised values based on a procedural error. The county revised the 2006 valuation upward on three parcels after it had sent an initial notice of each appraisal on March 1; the county discovered the change in property use after March 1 but before the appraisal rolls were certified on June 15. But the property-tax statutes set up a detailed process for making the valuation, notifying the taxpayer, and allowing the taxpayer an informal appeal, all occurring before the rolls are certified. Here, the county didn't need to make a late-breaking change: it simply chose not to send a person out to look at the properties until well after March 1. In these circumstances, we agree with the Court of Tax Appeals that the county may not change the 2006 valuations set out in its March 1 notices to the taxpayers.

Last, the landowners also contend that the county couldn't increase their valuations in the second of 2 years involved in the appeal because the landowners had succeeded in getting the first year's valuation for three tracts lowered, and K.S.A. 2010 Supp. 79-1460(a)(2) prevents retaliation when a taxpayer wins an appeal by providing that the valuation not be raised the following year unless "documented substantial and compelling reasons exist" to do so. But the county has shown substantial and compelling reasons: according to evidence accepted by the Court of Tax Appeals,

the land was in fact vacant—and not used for agricultural purposes—in both years; only a technical error by the county preserved the lower, agricultural-use value in the appeal of the first year's valuations. In addition, both appeals were handled in a single proceeding by the Court of Tax Appeals, so it's clear that the county did not in any way retaliate for the taxpayers' appeal. In these circumstances, the county had the ability to value the properties as vacant—thus increasing each valuation—in year two. We affirm the Court of Tax Appeals' decision.

## Factual Background

This tax appeal involves six tracts of land in Wyandotte County owned by three different legal entities: Oakhill Land Company, which owns three tracts; Quivira Village, LLC, which owns two tracts; and Quivira Village North, LLC, which owns one tract. Dale Barnhart is a principal owner of all three companies.

The tracts are near the golf course at Lake Quivira. When Barnhart bought them, they were zoned for agricultural use and were being used for agricultural purposes. Barnhart has sought—unsuccessfully so far—to get the properties rezoned to residential use. In the meantime, there is a significant advantage to maintaining the agricultural-use classification of these properties because Kansas has much lower property-tax rates for land used for agricultural purposes.

The dispute over the 2006 appraised values concerns only four of the six tracts. The county initially classified three of them as agricultural, and it mailed notices to the property owners with that classification and a corresponding valuation for property-tax purposes. The county's initial appraisal for a fourth tract classified it as vacant. But after additional inspection and a reevaluation of the properties in June, the county changed the classifications of the first three tracts to vacant, which caused a substantial increase in each tract's valuation for property-tax purposes. The county didn't send the taxpayers notice of these changes until August 29, 2006. Table 1 shows the original and amended 2006 classifications and appraised valuations. The taxpayers challenged each of the classi-

fications of vacant and contended that each of the tracts should have been classified agricultural.

Table 1

| Owner | Parcel No. | County's Initial 2006 Classifica- tion | County's Initial 2006 Value | County's Amended 2006 Classifica- tion | County's Amended 2006 Value |
|---|---|---|---|---|---|
| Quivera Village North, LLC | 930005 | Agricultural | $1,900 | Vacant | $633,100 |
| Quivera Village, LLC | 929902 | Agricultural | $3,300 | Vacant | $793,700 |
| | 930002 | Residential | $15,500 | Vacant | $169,900 |
| Oakhill Land Co. | 929811 | Vacant | $11,300 | N/A | N/A |

The county's 2007 appraised value for each property is shown in Table 2. For 2007, all of the tracts were classified by the county as vacant, and the taxpayers again contended that they should have been classified as agricultural.

Table 2

| Owner | Parcel No. | County's 2007 Classification | County's 2007 Value |
|---|---|---|---|
| Quivera Village North, LLC | 930005 | Vacant | $371,500 |
| Quivera Village, LLC | 929902 | Vacant | $1,533,200 |
| | 930002 | Vacant | $12,500 |
| Oakhill Land Co. | 929811 | Vacant | $11,300 |
| | 929805 | Vacant | $36,000 |
| | 929808 | Vacant | $6,100 |

The appeals from both tax years were ultimately heard by the Court of Tax Appeals in a single, consolidated hearing. Barnhart was the only witness for the taxpayers.

Barnhart testified that he bought the properties in 2002 or 2003 with the long-term goal of turning them into a residential development. So far, he said, he hadn't been able to obtain residential zoning.

Barnhart presented a lease entered into in 2003 with farmer Don Marrs under which Marrs agreed "to harvest the saleable timber" on the properties. Barnhart said that he had observed Marrs thinning out underbrush and pruning trees so that they would be more valuable in the future, and that there were walnut trees on the properties that would be worth up to $20,000 in total when fully grown. Barnhart said he had made no money on the properties in 2006 but claimed to have paid taxes on $511 received in cash from agricultural use of parcel 929902 in 2007; he did not present any documents showing that. Nor did he present any documents showing a plan to remove walnut trees or other timber from the properties. Additionally, Barnhart resides in Florida, and he had no firsthand knowledge of whether the land was actually put to agricultural use, relying instead on Marrs to take whatever actions were needed to remove timber from the land. Marrs did not testify.

Two witnesses testified for the county: Ralph Bellamy and Roy Wheat, both appraisers working for the county. Bellamy testified that landowners who grew trees on their property usually had a plan that set out expected time frames for harvesting the product and that tree farms usually had rows of trees planted for harvesting on a schedule. He said that the lack of these indications of the agricultural production of timber was a factor considered when the county changed the classification of some tracts from agricultural to vacant.

Wheat inspected the properties at issue in the 2006 appeal on June 9, 2006, after someone had reported that no agricultural activity was taking place there. On visual inspection, Wheat found no evidence of agricultural use. He also looked at aerial photographs taken 5 years earlier to determine whether there was evidence that trees had been harvested; he found more tree growth in recent years than in the past with no evidence of harvesting. So Wheat changed the classifications for the three tracts from agricultural to vacant.

The Court of Tax Appeals found that Barnhart's testimony about timber activity was not persuasive because it wasn't specific or based on firsthand knowledge. The court noted that there was no evidence of any agricultural income from the property in 2005 or 2006, no evidence of timber harvesting in 2005 or 2006, and no evidence of other activity during those years that might be part of a long-term timbering business. The court concluded that the evidence wasn't sufficient to show agricultural use.

I. *The County Has Not Shown a Legal Error by the Court of Tax Appeals Because the Court Correctly Concluded that a County May Make Only Necessary Changes to a Parcel's Classification or Appraised Valuation after March 1.*

We first consider the issue cross-appealed by the Unified Government because its resolution will affect another issue on appeal. The landowners won one contested issue before the Court of Tax Appeals, which concluded that a county could not—at its "sole discretion"—change the classification for a parcel, thus increasing the property tax due, after sending the required notice of classification that must be mailed by March 1. The Unified Government has appealed that ruling, and it seeks to apply the vacant classification to three parcels it had initially classified as agricultural or residential for 2006. The county reviewed its appraisal of those properties in June 2006 and notified the owners of the change to vacant in late August 2006, but the Court of Tax Appeals concluded that the county was bound by the notice sent March 1.

The county notes that K.S.A. 79-1465 authorizes the county appraiser "to make any necessary changes to the classification or appraised value" until the appraisal rolls are certified on June 15. The county also notes that the statute requiring mailed notice of the classification by March 1 explicitly provides that the "[f]ailure to timely mail or receive such notice shall in no way invalidate the classification or appraised valuation as changed." K.S.A. 2010 Supp. 79-1460(a). In the county's view, if the failure to mail the notice by March 1 doesn't invalidate "the classification or appraised value as changed," surely the county may still make changes after March 1.

The Court of Tax Appeals disagreed. In its view, if the appraiser is required to mail notice of the classification by March 1, surely the appraiser must "complete its valuation prior to mailing the valuation notice." Moreover, the Court of Tax Appeals concluded that taxpayers should be able to rely upon that notice as the county's final classification and appraised value. The Court of Tax Appeals provided two points in support of that conclusion. First, it noted that taxpayers have a detailed system of appeals available to them between the March 1 notice and the June 15 certification of the appraisal rolls. If the county can make a change after June 1, as it did here, the taxpayer loses the right to use the appeal system that's available before the tax is due: A later appeal system, available by paying the tax "under protest," requires that the taxpayer first *pay* the higher amount before getting an appeal. See K.S.A. 2010 Supp. 79-2005. Second, the Court of Tax Appeals noted that finality in tax matters is usually quite important, citing our court's decision in *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d. 902, 912, 159 P.3d 1050, *rev. denied* 285 Kan. 1174 (2007).

The question is one of statutory interpretation, and we must make our own independent determination of statutory meaning. Our goal is to determine the legislature's intent through the statute's language, which is generally done by giving ordinary words their ordinary meaning. *State v. Finch*, 291 Kan. 665, Syl. ¶ 2, 244 P.3d 673 (2011); *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, 761, 265 P.3d 1194 (2011). In the past, Kansas courts gave substantial deference to a statutory interpretation by the agency that had the responsibility of enforcing a statute, which included the former Board of Tax Appeals. See *In re Application of Zivanovic*, 261 Kan. 191, 193-95, 929 P.2d 1377 (1996). But Kansas courts no longer give any deference to an administrative agency's statutory interpretation. See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 904, 249 P.3d 434 (2011); *Wheatland Electric Cooperative*, 46 Kan. App. 2d at 761. Thus, although we still properly consider the reasons given by the Court of Tax Appeals for its decision, we must make our own determination of the statute's meaning.

We find the Court of Tax Appeals' analysis persuasive when we place the March 1 deadline for mailing notice in the statutory context set up by the legislature. Appraisers must determine the fair-market value of each parcel as of January 1. K.S.A. 79-1455. With some limited exceptions, the appraiser "shall notify each taxpayer . . . on or before March 1 for real property . . . of the classification and appraised valuation of the taxpayer's property." K.S.A. 2010 Supp. 79-1460(a). The appraiser must make a classification and determine an appraised value before providing notice of it, so the Court of Tax Appeals correctly concluded that the statute implies that these acts must be done by March 1 if notice is to be sent on the statutory schedule.

Even so, when the county has changed a classification or increased a property's appraised value, the failure to mail notice of that by March 1 doesn't invalidate "the classification or appraised value as changed." K.S.A. 2010 Supp. 79-1460(a). But the county's claim that this provision allows it to make whatever changes it may want between March 1 and June 15 is neither consistent with the implied requirement that classification and appraisal be made by March 1 or with the exception in K.S.A. 79-1465, which allows the county appraiser only "to make any *necessary* changes to the classification or appraised value" before the rolls are certified on June 15. (Emphasis added.) If the county could make changes for *any* reason, K.S.A. 79-1465 would not be limited to the making of "necessary changes."

Our reading of these statutes is consistent with the overall statutory scheme, which provides for an informal, but detailed, appeals process between the March 1 determination of classification and appraised value and the June 15 tax-roll certification. See K.S.A. 2010 Supp. 79-1448. While the taxpayer still retains a separate ability to appeal the classification and valuation by paying the tax under protest, the taxpayer must first *pay* the tax to use that process. See K.S.A. 2010 Supp. 79-2005. The earlier, informal appeal is therefore an important part of the statutory system, allowing the taxpayer to appeal and be heard before the tax rolls are certified and before the tax must be paid to obtain any appeal. Even if the March 1 notice is for any reason not received by a taxpayer, the

taxpayer knows that the county must send it by March 1, so the taxpayer can contact the county appraiser's office to get the information in advance of the deadline (30 days after the notice is mailed) for requesting an informal appeal.

We conclude that a county appraiser must make an initial classification and determine the appraised value of each parcel by March 1, the date on which notice of this information is to be mailed to the taxpayer. Only "necessary changes" may be made between March 1 and certification of the tax rolls. In our case, there simply was no necessity to the change in valuations. The county chose not to investigate the status of these parcels between January 1, the "as of" date for the valuation, and March 1. A county may not later change the classification or increase the appraised valuation simply because the county chooses to wait to inspect the property until after the deadline. There is no evidence in our record that the county was for any reason unable to inspect these properties by March 1; on this record, there is no showing of necessity. The county is therefore precluded from changing the classification and appraised valuation as it did here, on June 9. The Court of Appeals correctly held the county to the classification and appraised valuation determined by March 1.

II. *The Landowners Have Not Shown Error in the Classification of the Properties' Use as Vacant Rather Than Agricultural.*

The landowners' first challenge is to the county's decision to classify the use of these properties as vacant rather than agricultural. Our ruling on the first issue limits the dispute here. While the county had sought to classify four tracts as vacant for 2006, it may not do so with respect to the three tracts it had initially classified as of March 1 as agricultural or residential. Thus, the landowners challenge applies to the county's original classification of one parcel (No. 929811) as vacant for 2006, as well as the classification of all six parcels as vacant for 2007.

Before we discuss this issue, we must provide some further detail about the rules that apply to our review of a decision of the Court of Tax Appeals. Although the former Board of Tax Appeals was renamed the Court of Tax Appeals in 2008, it still is an adminis-

trative body whose decisions are reviewed under the statute generally applied when reviewing agency decisions, the Kansas Judicial Review Act, K.S.A. 77-601 *et seq*. See K.S.A. 2010 Supp. 74-2426(c). The Kansas Judicial Review Act provides several bases under which an agency's ruling may be set aside in court. On this issue, the landowners argue that the Court of Tax Appeals' decision should be set aside because it was not supported by substantial evidence, see K.S.A. 2010 Supp. 77-621(c)(7), and because it was otherwise unreasonable or arbitrary, see K.S.A. 2010 Supp. 77-621(c)(8).

When a party claims that an agency's decision isn't supported by substantial evidence, we must consider all the evidence—including evidence contrary to the agency's decision—in our review. See K.S.A. 2010 Supp. 77-621(c)(7); K.S.A. 2010 Supp. 77-621(d). To uphold that decision, the evidence in support of it must be substantial, meaning that a reasonable person could accept it as being sufficient to support the conclusion reached. See *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 362-63, 212 P.3d 239 (2009). Sometimes, part of the evidence may have been so undermined by cross-examination or other evidence that a reasonable person would no longer accept it as sufficient to support the agency's conclusion. 42 Kan. App. 2d at 363. In such cases, we essentially filter out that evidence and determine whether what remains is enough for a reasonable person to accept the agency's factual findings and conclusions. See *Abdi v. Tyson Fresh Meats, Inc.*, No. 104,132, 2011 WL 3444330, at *3 (Kan. App 2011) (unpublished opinion).

The landowners' claim that the decision should be set aside under K.S.A. 2010 Supp. 77-621(c)(8) as otherwise unreasonable or arbitrary is, on our facts, really just another claim that the evidence supported another conclusion. As the landowners phrased it in their appellate brief, the agricultural classification was "not based on the substantial evidence contained in the record as a whole, and is *therefore* arbitrary and capricious." (Emphasis added.) Although the landowners correctly cite to some cases that indicate that a decision not supported by substantial evidence is arbitrary, such language improperly conflates the separate tests set out in K.S.A.

2010 Supp. 77-621(c)(7)—the substantial-evidence test—and in K.S.A. 2010 Supp. 77-621(c)(8)—the test for action that is "otherwise unreasonable" or arbitrary and capricious.

These tests mean different things. A challenge under K.S.A. 2010 Supp. 77-621(c)(8) attacks the quality of the agency's reasoning. See *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010) (stating that agency may have acted arbitrarily when it fails to properly consider factors courts require it to consider to guide its discretionary decision); *Wheatland Electric Cooperative*, 46 Kan. App. 2d 746, Syl. ¶ 5 (providing factors to consider when determining whether agency acted within its discretion); Gellhorn & Levin, Administrative Law and Process in a Nutshell, p. 103 (5th ed. 2006) ("[T]he emphasis in arbitrariness review [is on] the *quality of an agency's reasoning*."). Although review must give proper deference to the agency, its conclusion may be set aside—even if supported by substantial evidence—if based on faulty reasoning. A challenge under K.S.A. 2010 Supp. 77-621(c)(7) attacks the quality of the agency's fact-finding, and the agency's conclusion may be set aside if it is based on factual findings that are not supported by substantial evidence. The challenge the landowners make here seems primarily formed under the substantial-evidence test of K.S.A. 2010 Supp. 77-621(c)(7), and we will focus our discussion there.

The factual dispute about whether the land was being used for agricultural purposes or was simply vacant is significant because of the way Kansas taxes real estate. The Kansas Constitution provides that "[l]and devoted to agricultural use" is valued based on its income production rather than the price a willing buyer would pay a willing seller. Kan. Const., Art. 11, § 1(a) (2010 Supp.). The Kansas Constitution gave the legislature the power to define what constitutes land devoted to agricultural use, Art. 11, § 12, and it has provided that such land must be "devoted to the production of plants, animals or horticultural products," which includes "trees and forest products." K.S.A. 2010 Supp. 79-1476.

These provisions certainly suggest that some activity must be taking place. The constitutional provision speaks of land *devoted* to agricultural *use*, and the statute speaks of land devoted to the

*production* of agricultural goods. In this context, the Court of Tax Appeals' decision is supported by substantial evidence. Both of the county's witnesses testified that they saw no indication that there had been *any* cutting of timber on these parcels; the county also presented evidence that landowners who grew trees for agricultural purposes usually had a plan showing expected time frames for harvesting the product. The landowners presented no harvesting plan and no documents that showed anything had been produced. The mere existence of a lease allowing production does not demonstrate that any production actually took place.

The Court of Tax Appeals found Barnhart's testimony of production unconvincing: Though he said he thought he had paid taxes on $511 he had received in cash payments for 2007 agricultural use of one parcel, he provided no documents to support the claim. Barnhart's testimony was made before the Court of Tax Appeals, and we also must give deference to any credibility determinations made by a hearing officer or panel that had the chance to observe the witness' demeanor in person. See K.S.A. 2010 Supp. 77-621(d). There might be a hypothetical case in which the evidence, when fairly considered, was so strongly against the agency's factual findings that its credibility determinations could be overridden. But this is not such a case. Here, the evidence in favor of the Court of Tax Appeals' factual finding that the land was not devoted to agricultural use is strong. Given that the Court of Tax Appeals discounted Barnhart's testimony after hearing it in person, we certainly cannot overturn its factual finding of no agricultural usage.

The landowners cite our decision in *Board of Johnson County Comm'rs v. Smith*, 18 Kan. App. 2d 662, 669, 857 P.2d 1386 (1993), in support of their argument to retain the original classifications. In *Smith*, the landowner admitted that he was only using the land for agricultural purposes until the area was ready for development. The county changed the tax classification to vacant; but the then-Board of Tax Appeals reversed, and we affirmed that decision. We concluded that the landowner's motivations for putting the property to agricultural use were irrelevant, so it made no difference that agricultural use was being maintained only to keep the taxes low until the property could be sold for development. 18 Kan. App.

2d at 670-71. But *Smith* is unlike our case because there was no dispute in *Smith* that the owner had actually put the land to agricultural use: whenever there was sufficient rain for hay production, hay was removed from the land, and even the county conceded that the land was being used for agricultural purposes. 18 Kan. App. 2d at 666, 671. Whether the land was being used for agricultural purposes was a contested factual issue here, and substantial evidence supports the Court of Tax Appeals conclusion that it was not.

III. *The Landowners Have Not Shown a Violation of K.S.A. 2010 Supp. 79-1460(a)(2) by the County's 2007 Classification of All Six Parcels as Vacant.*

The landowners' final challenge is based on the way the appeals from the two different tax years were handled. The landowners initially challenged the 2006 classification of four parcels as vacant, which had resulted in a higher valuation. Before the Court of Tax Appeals heard that appeal, however, the county classified all six properties as vacant for 2007, and the landowners appealed those classifications (and the higher valuations that resulted) as well. The appeals for both 2006 and 2007 were consolidated into a single proceeding in the Court of Tax Appeals.

The Court of Tax Appeals ruled in the landowners' favor with respect to three parcels the county had initially classified as agricultural or residential, as detailed in notices the county sent in 2006; the Court of Tax Appeals held the county to the classifications it had made as of March 1, which left two parcels as agricultural and one as residential. When the court ruled in the landowners' favor in the 2006 appeal, the landowners argued that the county was then prohibited from increasing the valuations for those parcels in 2007 because of a statute, K.S.A. 2010 Supp. 79-1460(a)(2). As shown below, the statute's wording is a bit convoluted, but it provides that when a taxpayer has won an appeal, the county may not increase the valuation for the following year unless the county provides "documented substantial and compelling reasons" for the increase:

"(a) The county appraiser shall notify each taxpayer in the county annually on or before March 1 for real property . . . by mail . . . of the classification and appraised valuation of the taxpayer's property, except that, the valuation for all real property shall not be increased unless: (1) The record of the latest physical inspection was reviewed by the county or district appraiser, and documentation exists to support such increase in valuation in compliance with the directives and specifications of the director of property valuation, and such record and documentation is available to the affected taxpayer; and (2) for the taxable year next following the taxable year that the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process, documented substantial and compelling reasons exist therefor and are provided by the county appraiser." K.S.A. 2010 Supp. 79-1460(a)(1), (2).

The statute doesn't expressly consider a situation like this one, in which the appeal for 2 (or more) years has been consolidated. But even if the statute's terms may be applied to such a case, the county here has provided documented, substantial, and compelling reasons for its 2007 classification of vacant and the resulting higher appraised values. The county presented evidence that there was no agricultural use in either 2006 or 2007. The Court of Tax Appeals held the county to the agricultural classification for 2006 only because the county appraiser made the classification too late—well after the March 1 deadline. The change in classification for 2007 was neither arbitrary nor a retaliation for taking the 2006 appeal; it was based on evidence gathered by the county and accepted in a contested hearing by the Court of Tax Appeals.

The landowners argue that the county did not provide documentation of the substantial and compelling reasons in its March 1 notice for the 2007 valuation. But of course, since the appeals for the 2006 and 2007 appraisals were consolidated, the county didn't know when it sent notice of the 2007 appraisals that the Court of Tax Appeals would rule against it in the 2006 appeal. Still, by the time the 2007 notices were sent, the 2006 appeal was in progress and the landowners knew why the county had classified four parcels as vacant in 2006, which was the basis for the appraised values. The county had sent notice of the change in classification to vacant for four parcels on August 29, 2006, and by the time the Court of Tax Appeals ruled in the landowners' favor on three parcels for the 2006 tax year, the taxpayers were well aware of all of

the documentation held by the county. We agree with the Court of Tax Appeals that if the cited provision of K.S.A. 2010 Supp. 79-1460(a)(2) applies here at all, the county complied with it.

The decision of the Court of Tax Appeals is affirmed.