NOT DESIGNATED FOR PUBLICATION

No. 114,499

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE
EQUALIZATION APPEAL OF T.E.N.
INVESTMENTS, INC., FOR THE YEAR
2014 IN JOHNSON COUNTY, KANSAS.

MEMORANDUM OPINION

Appeal from the Board of Tax Appeals. Opinion filed July 15, 2016. Affirmed.

*Kathryn D. Myers*, assistant county counselor, for appellant.

*John L. Lentell*, of Leawood, for appellee.

Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.

LEBEN, J.: For the 2014 tax year, Johnson County valued real estate owned by T.E.N. Investments, Inc. (and occupied by a car dealership) at $12,265,670. The taxpayer disputed that value informally and argued for a value of $10,174,185. The County then discovered that its original valuation had been based on underestimated square footage and reappraised the property at $13,287,670. After a hearing, the Board of Tax Appeals adopted the County's original $12 million appraisal with just one change—subtracting one line item as not supported by the evidence, resulting in a value of $11,777,320. The County has appealed, arguing that the Board should have adopted its $13 million appraisal value before subtracting the unsupported line item because the Board knew that the $12 million value was based on incorrect square footage. But even after telling the Board about the square-footage error, the County specifically asked the Board to overlook it and adopt the County's original $12 million value. By doing so, the County

invited the Board to accept the lower square-footage numbers; it cannot now reverse course. We therefore affirm the Board's decision.

FACTUAL AND PROCEDURAL BACKGROUND

T.E.N. Investments, Inc., owns real estate on which a car dealership sells luxury car brands, including Mercedes-Benz, Porsche, Jaguar, and Ferrari. There are four buildings on the property, including showrooms, service areas, office space, and a parking garage.

For the 2014 tax assessment, Johnson County valued this property at $12,265,670. The taxpayer informally challenged this value and did its own appraisal, which valued the property at $10,174,185. During the informal appeal, the County realized that it had under-calculated the buildings' square footage. That was an important error: the County's valuation of the property was based on the cost approach, so the property's square footage was multiplied by various cost estimates to arrive at an initial land value that was then subject to some adjustments. By underestimating the square footage, the County contended, its original appraisal had undervalued the property. The County completed a second appraisal with the updated square footage, valuing the property at $13,287,670.

The informal appeal did not end the disagreement about property value, and the taxpayer appealed the County's original value, $12,265,670, to the Board of Tax Appeals, which held a hearing in April 2015. The parties don't dispute that it was the County's burden to prove the value of the property. The County and the taxpayer each presented expert testimony from their respective appraisers and stipulated to both experts' qualifications.

2

The County presented the testimony of Perry Bailey, the Board of Tax Appeals Specialist in the County Appraiser's Commercial Department. The parties stipulated to Bailey's qualifications to testify as an expert witness.

Bailey explained both the original appraisal value and the revised one. Even so, in answer to a question from the County's attorney, he specifically asked the Board to adopt the original appraisal value:

> "Q[:] For purposes of the appeal here today, the county is however still recommending the original value?
>
> "A[:] Even though the corrected cost report would indicate a higher value, due primarily for the additional square footage, County is asking that the Court sustain—sorry, that the Board sustain the original value."

The taxpayer's expert witness, Troy Smith, attempted to undermine various elements of both of the County's appraisals. The parties also stipulated that Smith was qualified to testify as an expert witness. Smith has been certified as an appraiser by the Appraisal Institute, a private nonprofit professional association.

Smith said that the County shouldn't have included a 5% "entrepreneurial profit" in its appraisals. According to Smith, an "entrepreneurial profit" is also called "developer's profit"—it is the profit that motivates a developer to develop and lease a property. Smith testified that entrepreneurial profit usually isn't included for properties like car dealerships, which tend to be build-to-suit, single-use properties that aren't developed for speculative purposes. The County's appraiser didn't testify about entrepreneurial profit, but both of the County's appraisals included an adjustment to the cost-approach value based on a 5% entrepreneurial profit.

At the time of the Board's hearing, K.S.A. 2014 Supp. 74-2426(a) provided that the Board would first issue a summary order; a party to the appeal could then seek a full

3

written decision that could serve as a basis for a request to the Board to reconsider or for an appeal to our court. The Board filed its summary order on May 7, 2015, adopting the County's original appraisal, as the County had asked. The Board's order said that it found the County's evidence for the 5% entrepreneurial profit unpersuasive, so it deducted that from the County's original appraisal value, resulting in a value of $11,777,320.

The County then requested a full decision from the Board, and the Board filed that order on August 17, 2015. The final order made the same rulings and further explained how it had removed the 5% entrepreneurial profit to reach the final $11.7 million value.

The County then filed a motion for reconsideration, arguing that the Board's value was incorrect and unfair because it was based on inaccurate square footage and that the Board shouldn't have removed the 5% entrepreneurial profit. The Board denied the County's motion to reconsider, and the County then appealed to our court.

ANALYSIS

The County argues that the Board adopted the wrong appraised value and shouldn't have removed the entrepreneurial-profit adjustment. By starting from the wrong appraised value and then removing the entrepreneurial-profit adjustment, the County contends that the Board adopted an unfairly low value for the taxpayer's property.

We review decisions of the Board of Tax Appeals under the Kansas Judicial Review Act. K.S.A. 2015 Supp. 74-2426; K.S.A. 2015 Supp. 77-621. The appellant—in this case, the County—bears the burden of proving the invalidity of the agency action. K.S.A. 2015 Supp. 77-621(a)(1). We must uphold the Board's decision unless, among other reasons not relevant here, the Board has wrongly interpreted or applied the law, the Board's decision is not supported by substantial evidence, or the Board's decision is otherwise unreasonable, arbitrary, or capricious. K.S.A. 2015 Supp. 77-621(c)(4), (7),

4

(8). Each of these possibilities requires us to apply a different standard to guide our review.

First, we interpret statutes without deference to the agency's interpretation. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). Generally, we try to determine the legislature's intent based on the statute's language, giving ordinary words their ordinary meanings. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918-19, 349 P.3d 469 (2015).

Second, evidence is substantial if a reasonable person would find it sufficient to support a conclusion. *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). When reviewing whether an agency action is supported by substantial evidence, the court must consider the evidence in light of the entire record, including evidence both supporting and detracting from the agency's decision, but the court should not reweigh the evidence or substitute its judgment for that of the agency. K.S.A. 2015 Supp. 77-621(c)(7), (d); *Sierra Club v. Moser*, 298 Kan. 22, 62, 310 P.3d 360 (2013); *Herrera-Gallegos*, 42 Kan. App. 2d at 362-63. The substantial-evidence standard considers the quality of the agency's factfinding. *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1115, 269 P.3d 876 (2012).

Third, a decision that is "otherwise unreasonable, arbitrary, or capricious" is a decision that is based on faulty reasoning, rather than faulty factfinding. 46 Kan. App. 2d at 1115. The question under this standard is whether an agency's action is justified, reasonable, and grounded in the facts. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010).

Here, the County argues that the Board wrongly applied Kansas law because it adopted an appraised value—the value from the County's original appraisal—that was based on incorrect square footage. By statute, the County notes, the size of the property is

one of the factors relevant to determining a property's fair market value. K.S.A. 2015 Supp. 79-503a. As the County also correctly notes, when determining the validity of an assessment of real property, the essential question is whether the standards prescribed by statute in K.S.A. 2015 Supp. 79-503a have been considered and applied by taxing officials. *Krueger v. Board of Woodson County Comm'rs*, 31 Kan. App. 2d 698, 702, 71 P.3d 1167 (2003), *aff'd* 277 Kan. 486, 85 P.3d 686 (2004).

But in this case, the County specifically asked the Board to adopt its original appraisal value. By doing so, the County invited any error that may have occurred. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203-04, 308 P.3d 1238 (2013). "Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous." *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 (1962).

The County conceded its incorrect square-foot measurements when it asked the Board to uphold the original appraisal value. Bailey's testimony was quite clear on this point: "Even though the corrected cost report would indicate a higher value, due primarily [to] the additional square footage, [the] County is asking . . . that the Board sustain the original value." Moreover, Bailey testified that he was the official charged with making decisions about the appraisal appeal: "[B]asically I would review the entire file, review the appeal and make a determination, as far as, how to move forward."

Even in the County's motion for reconsideration, it asked the Board to "sustain the County's value." And the County's brief on appeal asks this court to overturn the Board's decision and reinstate "the County's original cost approach value, the value that was appealed, of $12,265,670."

In each of these requests, the County asks for a valuation based on the square-footage error and yet simultaneously argues that the Board violated Kansas law because it

based its valuation on that same error. If it was error for the Board to adopt the $12 million value because it was based on incorrect square footage, surely it would be error for this court to reinstate that same value.

The County's real point of contention is not that the Board chose the original appraisal value, as it had asked, but that the Board deducted the 5% entrepreneurial-profit adjustment from the original appraisal value. The County's original appraisal value was $12,265,670, and the Board adjusted that downward to $11,777,320. The County doesn't argue on appeal that the Board erred when it deducted the 5% entrepreneurial profit. Instead, the County argues that the Board should have deducted the 5% entrepreneurial profit from the higher appraised value, $13,287,670. Doing so would have resulted in a value of $12,771,952—higher than the County's original appraised value.

But that was not the value the County asked the Board to adopt at the hearing. And with its request, the County essentially conceded that the square-footage error didn't matter. The County's appraiser even declined to completely explain the differences between the original and corrected appraisals, stating that while he could go line-by-line through the changes, it would be very time-consuming; this further indicates the County's position that the square-footage error wasn't relevant. The County cannot now change its strategy and argue that the square-footage error *does* matter and that it was contrary to Kansas law to adopt the original appraisal simply because the Board chose to subtract the entrepreneurial factor from it.

Additionally, we note that the Board's decision to subtract the 5% entrepreneurial profit was supported by substantial evidence. Smith testified that entrepreneurial profit usually isn't included for properties like car dealerships, which tend to be build-to-suit, single-use properties that aren't developed for speculative purposes. Bailey didn't discuss entrepreneurial profit in his testimony, and the County's written appraisals (admitted as an exhibit) didn't include a narrative description of why the value obtained through the

7

cost approach was increased to include entrepreneurial profit. So the only evidence before the Board at the hearing was that entrepreneurial profit isn't usually applied to this type of property. The County's motion for reconsideration included some general quotations from an appraisal treatise about entrepreneurial profit, but those quotations didn't substantially undermine Smith's expert testimony about reasons not to include an adjustment for entrepreneurial profit for this property.

Finally, the parties spend a great deal of time in their briefs discussing whether the square-footage evidence was or was not contested at the hearing. But whether it was contested or not really isn't relevant to the appeal—the County conceded its original square-footage figure could be used when it asked the Board to sustain the original appraised value, which was based on the lower square-footage figure.

The County has not shown any error in the Board's decision; we therefore affirm it.