IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,692

VIA CHRISTI HOSPITALS WICHITA, INC.,
*Appellant*,

v.

KAN-PAK, LLC, ET AL.,
*Appellees*.

SYLLABUS BY THE COURT

1.

Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction.

2.

Whether subject matter jurisdiction exists is a question of law over which this court's scope of review is unlimited.

3.

When reviewing an agency action under the Kansas Judicial Review Act, a court shall grant relief only when it determines that the agency violated one or more of the provisions listed in K.S.A. 2018 Supp. 77-621(c)(1)-(8).

4.

Under the facts of this case, the Workers Compensation Appeals Board's enforcement of the plain language of the fee schedule created under the director of

workers compensation's statutory authority was not unreasonable, arbitrary, or capricious under K.S.A. 2018 Supp. 77-621(c)(8).

Review of the judgment of the Court of Appeals in 54 Kan. App. 2d 624, 402 P.3d 602 (2017). Appeal from Workers Compensation Board. Opinion filed November 1, 2019. Judgment of the Court of Appeals reversing the Workers Compensation Board is reversed. Judgment of the Workers Compensation Board is affirmed.

*Edward D. Heath, Jr.*, of Law Office of Edward D. Heath, Jr., of Wichita, argued the cause and was on the briefs for appellant.

*Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Douglas C. Hobbs*, of the same firm, of Wichita, was with him on the briefs for appellee Paradigm Management Services, LLC.

The opinion of the court was delivered by

NUSS, C.J.:  This case concerns a fee dispute between a hospital that provided extensive medical services to a severely burned worker and a workers compensation insurance carrier that paid the hospital considerably less than the billed amount for those services. A hearing officer ruled in favor of the carrier, Paradigm Management Services, LLC (Paradigm), essentially holding it had appropriately paid the amount required by the schedule for maximum medical fees established by the director of the Division of Workers Compensation. His decision was upheld by the Workers Compensation Appeals Board (Board).

After the hospital, Via Christi Hospitals Wichita, Inc. (Via Christi), appealed to the Court of Appeals under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., the court reversed. It essentially held the Board's enforcement of the maximum medical fee schedule was unreasonable, arbitrary, and capricious because the applicable

2

fee limiting provision had been accidentally created. So Paradigm owed Via Christi considerably more money. *Via Christi Hospitals Wichita, Inc. v. Kan-Pak LLC*, 54 Kan. App. 2d 624, 630, 402 P.3d 602 (2017). Now Paradigm has appealed via K.S.A. 20-3018(b).

We conclude we have subject matter jurisdiction of this appeal under K.S.A. 2018 Supp. 77-614 of the KJRA. But as a matter of law, the relief sought by Via Christi—and ordered by the Court of Appeals—cannot be granted in this proceeding under K.S.A. 2018 Supp. 77-621(c). So we reverse the Court of Appeals panel and affirm the hearing officer and the Board.

FACTUAL AND PROCEDURAL BACKGROUND

Darin Pinion suffered severe burns while working at Kan-Pak, LLC (Kan-Pak) in 2011 and was treated that same year. Via Christi provided medical treatment in the total billed amount of $1,048,569. Kan-Pak's workers compensation insurance carrier was Travelers Indemnity Company of America (Travelers). Travelers contracted with Paradigm, an out-of-state corporation which specializes in medical management of complex workers compensation cases, to assume Travelers' obligations for Pinion's past and future medical needs. Of Via Christi's bill, Paradigm only paid $136,451.60 in purported full payment under the 2011 Schedule of Medical Fees. ("2011 maximum fee schedule"). See, e.g., K.S.A. 2011 Supp. 44-510i; K.A.R. 51-9-7.

One year earlier, in 2010, the Division of Workers Compensation (Division) had created a "stop-loss" provision in its fee schedule. The Division's stated reason for the stop-loss methodology was to compensate hospitals for "unusually costly services rendered during treatment to an injured worker." This provision essentially stated that if the total charges of an inpatient hospital stay equaled or exceeded $60,000, those charges were multiplied by 70 percent to determine the allowed reimbursement. But if the total

3

charges did not reach the $60,000 stop-loss threshold, then hospitals were reimbursed using the Medicare Severity-Diagnosis Related Group (MS-DRG) method which had previously been used.

This stop-loss methodology was repeated in the 2011 maximum fee schedule. But without the knowledge of the Division's manager of medical services or the appointed medical administrator (see K.S.A. 2011 Supp. 44-510i), the 2011 version also included the sentence:  "If the MS-DRG level of reimbursement exceeds the $60,000 stop-loss threshold, the facility shall be paid billed charges multiplied by 70% or the MS-DRG level *whichever is least*; all other rules apply to making this determination." (Emphasis added.)

The origin of the "whichever is least" language—upon which Paradigm relies for its lowered payment to Via Christi—is unclear. Meeting minutes contain no indication that anyone within the Division, or advising the Division, had noticed the insertion of this language. The manager of medical services, Anne Haught, was responsible for guiding the 2011 maximum fee schedule through the process of adoption. See K.S.A. 77-602(j) ("'Rulemaking' means the process for formulation and adoption of a rule and regulation."). As Haught testified during a hearing, the Division's adding of the phrase "whichever is least" would have been a significant enough change to come up as part of the process of adopting the 2011 maximum fee schedule. But it was not discussed which, according to her testimony, indicated it was not intended to be there. In fact, no one in the record available to this court explained how this particular language was inserted. The 2011 maximum fee schedule was adopted and incorporated by reference into K.A.R. 51-9-7. See K.S.A. 2011 Supp. 44-510i(c) (The workers compensation "director shall prepare and adopt rules and regulations which establish a schedule of maximum fees for . . . hospital . . . services.").

4

While Paradigm relies on the "whichever is least" language in the 2011 maximum fee schedule to justify its lowered payment, Via Christi responds that Paradigm should have paid $732,426.97—70% of the billed charges—or an additional $595,975.37, because the "whichever is least" amending language was accidentally included. This language was not in the 2010 or 2012 versions, or any subsequent year.

Via Christi proceeded with the steps set forth in K.S.A. 2015 Supp. 44-510j to try to resolve the fee dispute with Paradigm, which had begun with Paradigm's notification to Via Christi under the statute's subsection (a)(1) regarding the existence of a dispute. When resolution between the parties was unsuccessful, it was followed by Via Christi's request for an informal hearing before the director. K.S.A. 2015 Supp. 44-510j(a)(1). The informal hearing was unsuccessful and the director scheduled a formal hearing. K.S.A. 2015 Supp. 44-510j(d). After the formal hearing, a hearing officer in the Division agreed with Via Christi that the "whichever is least" language was erroneously included. But he held that a hearing officer did not have authority to strike the language and thus could not rule in favor of Via Christi.

Via Christi then appealed this decision to the Board under K.S.A. 2015 Supp. 44-510j(d)(2). The Board is within the Division. See K.S.A. 2015 Supp. 44-555c(a). Like the hearing officer, the Board found the addition of the "whichever is least" language was accidental. But it too ruled it had no authority to void the 2011 maximum fee schedule's amending language to hold in Via Christi's favor.

Via Christi then appealed the Board's decision directly to the Court of Appeals under K.S.A. 2016 Supp. 44-556(a). The panel observed that the director of workers compensation was statutorily tasked with adopting rules and regulations "which establish a schedule of maximum fees for medical, surgical, hospital, dental, nursing, vocational rehabilitation or any other treatment or services provided to employees under the

Workers Compensation Act." *Via Christi*, 54 Kan. App. 2d at 627 (citing K.S.A. 2016 Supp. 44-510i[c]).

The panel then ruled the amendment in the 2011 fee schedule was not correctly promulgated under the Rules and Regulations Filing Act—which made the amendment void. 54 Kan. App. 2d at 629-30 (citing K.S.A. 2016 Supp. 77-415). Specifically, the Act's required "determination of costs by the agency was not done here for the inserted 'whatever is least' language amending the 2011 fee schedule." 54 Kan. App. 2d at 629.

The panel effectively held it did have authority, under K.S.A. 2016 Supp. 77-621(c) of the KJRA, to declare the Board's enforcement of the improperly promulgated amendment to the 2011 maximum fee schedule to be unreasonable, arbitrary, or capricious. It reversed the Board and held in Via Christi's favor, no longer limiting the hospital to the payment of approximately 15% of its bill.

> "If we were to approve the Board's ruling and enforce this rule, our holding would be as arbitrary as the Board's. Essentially, we would be saying that it is a rule; therefore, it must be enforced even though it was created accidentally. Once created, rules are not indestructible. The Judicial Review Act permits this court to grant relief if the agency action is unreasonable, arbitrary, or capricious. See K.S.A. 2016 Supp. 77-621(c). The enforcement of *an accidentally created rule* is the very picture of an arbitrary or capricious action, and we reverse the Board's ruling enforcing it." (Emphasis added.) *Via Christi*, 54 Kan. App. 2d at 631.

Paradigm petitioned for review which we granted under K.S.A. 20-3018(b).

ANALYSIS

After oral arguments, we ordered supplemental briefing on the issue of jurisdiction and whether Via Christi's requested relief could be granted under the KJRA. As

6

explained below, we conclude subject matter jurisdiction exists. But as a matter of law the relief sought by Via Christi cannot be granted in this particular proceeding.

*Jurisdiction*

K.S.A. 44-556 provides for review of the Board directly to the Court of Appeals. It states in relevant part:

"(a) Any action of the board pursuant to the workers compensation act, . . . shall be subject to review in accordance with *the Kansas judicial review act by appeal directly to the court of appeals*." (Emphasis added.)

See, e.g., *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 212 P.3d 239 (2009) (direct appeal from Board).

The KJRA is found at K.S.A. 77-601 *et seq*. The KJRA allows for judicial review of "agency actions." See, e.g., K.S.A. 2018 Supp. 77-603(a); K.S.A. 77-606. According to legislative history, its two main goals are "uniform treatment of agency actions and increased accessibility to the court system." *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 777, 148 P.3d 538 (2006).

Potential judicial review of an agency action begins with a petition for review to the court. See K.S.A. 2018 Supp. 77-614. The petition's pleading requirements are contained in subsection (b):

"A petition for judicial review shall set forth:

"(1) The name and mailing address of the petitioner;

7

"(2) the name and mailing address of the agency whose action is at issue;

"(3) identification of the agency action at issue, together with a duplicate copy, summary or brief description of the agency action;

"(4) identification of persons who were parties in any adjudicative proceedings that led to the agency action;

"(5) facts to demonstrate that the petitioner is entitled to obtain judicial review;

"(6) the petitioner's reasons for believing that relief should be granted; and

"(7) a request for relief, specifying the type and extent of relief requested."

This court has held that because a "'petition for judicial review of an agency action is jurisdictional[,] . . . the failure to comply with the pleading requirements set forth in K.S.A. 77-614(b) precludes a litigant's statutorily granted right of appeal.'" *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 397, 204 P.3d 562 (2009) (citing *Bruch*, 282 Kan. 764, Syl. ¶ 2). Moreover, the compliance with these pleading requirements must be "strict" before a court may exercise jurisdiction over the petition. 288 Kan. at 399. But the pleading need not mirror the language of the statutory basis for the specific relief requested. 288 Kan. at 406-07. And see K.S.A. 2018 Supp. 77-614(c) ("Failure to include some of the information listed in subsection [b] in the initial petition does not deprive the reviewing court of jurisdiction over the appeal. Leave to supplement the petition with omitted information required by subsection [b] shall be freely given when justice so requires.").

Here, the parties do not dispute Via Christi's strict compliance with the pleading requirements of K.S.A. 2018 Supp. 77-614(b). In other words, they do not dispute

jurisdiction exists. However, "[p]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction." *Kingsley*, 288 Kan. at 395. Accordingly, issues relating to the court's subject matter jurisdiction may be raised by the court itself. See *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016). But after our independent examination based upon the principles identified in *Kingsley* and *Bruch*, we agree with the parties. In short, jurisdiction exists. See *Kingsley*, 288 Kan. at 395 (whether subject matter jurisdiction exists is a question of law over which this court's scope of review is unlimited).

*Available relief*

But of course the existence of jurisdiction does not end the matter. As we have stated:

> "When reviewing an administrative action under the KJRA, *a court shall grant relief only when it determines that the agency violated one or more of the provisions listed in K.S.A. 2016 Supp. 77-621(c)(1)-(8). Bluestem Telephone Co. v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 96, 107, 363 P.3d 1115 (2015). Because appellants are the ones asserting the agency's action is invalid, they bear the burden of proving the invalidity on appeal. See K.S.A. 2016 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016)." (Emphasis added.) *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017).

As a result, we next review K.S.A. 2018 Supp. 77-621(c) to begin analyzing whether any of its provisions were violated by the agency. It states in relevant part that "(a) except to the extent that this act or another statute provides otherwise":

> "(c) The court *shall grant relief only if* it determines any one or more of the following:

9

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) *the agency action is otherwise unreasonable, arbitrary or capricious.*" (Emphasis added.)

On appeal to this court, the parties have essentially narrowed the field of battle—i.e., the possible statutory ground for Via Christi's relief—to subsection (8). See Supreme Court Rule 8.03(b)(6)(C)(i) (2019 Kan. S. Ct. R. 55) ("The Supreme Court will not consider issues not raised before the Court of Appeals or issues not presented or fairly included in the petition for review, cross-petition, or conditional cross-petition. The court, however, may address a plain error not presented."). *In re Adoption of T.M.M.H.*, 307

10

Kan. 902, 918, 416 P.3d 999 (2018) (citing to 2018 version of the Rule). To the extent that resolution of the issues requires this court to interpret the KJRA or its regulations, our review is unlimited. See *Platt v. Kansas State University*, 305 Kan. 122, 126, 379 P.3d 362 (2016) (interpreting KJRA); *Cole v. Mayans*, 276 Kan. 866, 873, 80 P.3d 384 (2003) (interpreting regulations).

As mentioned, subsection (8) essentially is the ground for relief relied upon by the panel to reverse the Board. *Via Christi*, 54 Kan. App. 2d at 631 (citing K.S.A. 77-621[c] and holding: "The enforcement of an accidentally created rule is the very picture of an arbitrary or capricious action, and we reverse the Board's ruling enforcing it."). And it is the sole basis relied upon by Via Christi in its supplemental brief on jurisdiction ordered by this court. But as a matter of law, subsection (8) cannot provide Via Christi relief in this case—as explained below. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007) ("Appellate courts may only review the Board's decisions upon questions of law. K.S.A. 2005 Supp. 44-556[a].").

Typically, we begin our analysis by reviewing guidance to determine when an "agency action is otherwise unreasonable, arbitrary or capricious."

> "Essentially, the test under K.S.A. 77-621(c)(8) determines the reasonableness of the agency's exercise of discretion in reaching its decision based upon the agency's factual findings *and the applicable law*. See *Sunflower Racing, Inc*., 256 Kan. at 445." (Emphasis added.) *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, 757, 265 P.3d 1194 (2011).

The court used similar language in *In re Protests of Oakhill Land Co*., 46 Kan. App. 2d 1105, 269 P.3d 876 (2012): "A challenge under K.S.A. 2010 Supp. 77-621(c)(8) attacks the quality of the agency's reasoning." See also Gellhorn & Levin, Administrative Law and Process in a Nutshell, p. 103 (5th ed. 2006) ("[T]he emphasis in arbitrariness

11

review [is on] the *quality of an agency's reasoning.*") (Emphasis added.); 46 Kan. App. 2d at 1115.

While we would usually then proceed with a thorough "reasonableness" analysis, we need not do so to resolve the narrow issue as presented by Via Christi when it initiated this proceeding.

We first acknowledge that overall, K.S.A. 2018 Supp. 44-510i provides the authority of the director and the medical administrator on the general issue of maximum fees for medical benefits to injured workers and proceedings for resolving resultant fee disputes. To that end, the director

"*shall prepare and adopt* [1] *rules and regulations which establish a schedule of maximum fees* for medical, surgical, hospital, dental, nursing, vocational rehabilitation or any other treatment or services provided or ordered by health care providers and rendered to employees under the workers compensation act and [2] *procedures for appeals and review of disputed charges or services* rendered by health care providers under this section." (Emphases added.) K.S.A. 2018 Supp. 44-510i(c).

As for the medical administrator—appointed by or contracted with the director—his duties include "[p]reparing, with the assistance of the advisory panel, *the fee schedule* for health care services as set forth in this section." (Emphasis added.) K.S.A. 2018 Supp. 44-510i(a), (b)(1); see generally *Via Christi*, 54 Kan. App. 2d at 627-28.

In sum, by statute the director was ultimately responsible for making the 2011 maximum fee schedule amendment that Via Christi argued, and both the hearing officer and Board found, was accidentally created. Yet we note the director is not a party to the fee dispute proceeding initiated by Via Christi; nor did his purported faulty rulemaking appear as a cause of action there.

12

Rather, the sole issue presented by Via Christi in front of the hearing officer, the Board, and the panel was the amount of the fee allegedly owed by Paradigm to Via Christi for medical services to Pinion. In effect, Via Christi framed the issue by electing to proceed under K.S.A. 2018 Supp. 44-510j, a detailed statute exclusively devoted to the procedures and scope for resolving workers compensation medical fee disputes. The statute's limited scope is made clear in its opening sentence:

> "When an employer's insurance carrier . . . disputes all or a portion of a bill for services rendered for the care and treatment of an employee under this [workers compensation] act, the following procedures apply: . . . ." K.S.A. 2018 Supp. 44-510j.

The statute is replete with references to: (1) the exclusivity of this fee dispute issue; (2) the limitation on the particular parties, e.g., the insurance carrier and the service provider, to the fee-specific dispute; and (3) the binding effect of the maximum fee schedule on the provider. For starters, it provides that if an insurance carrier (Paradigm) disputes a bill, it "shall notify the provider (Via Christi) within 30 days of receipt of the bill of the specific reason for refusing payment or adjusting the bill." K.S.A. 2018 Supp. 44-510j(a)(1); K.S.A. 2018 Supp. 44-510j(i) (defining "carrier" to include insurance company and "provider" to include hospital). Then, the provider (Via Christi) may forward additional information and must "send any request for reconsideration within 30 days of receiving written notice *of the bill dispute*." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(a)(1). If after the additional information is provided the bill dispute still is not resolved, only the carrier, provider, or employer may apply for an informal hearing before the Director. K.S.A. 2018 Supp. 44-510j(a)(1).

As for further describing the limitation on those entities involved, copies of the informal hearing application "shall be sent to *all parties to the dispute and* the

13

employee." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(b). The application itself is limited, i.e., it "shall include copies of *the disputed bills*, all correspondence concerning the bills and any additional written information *the party* deems appropriate." (Emphases added.) K.S.A. 2018 Supp. 44-510j(b). Additionally, "[w]ithin 20 days of receiving the application . . ., *the other parties to the dispute* shall send any additional written information deemed relevant to the dispute to the director." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(b); see also K.S.A. 77-602(f) ("'Party to agency proceedings' or 'party' in context so indicating, means . . . [2] a person named as a party to any agency proceeding or allowed to intervene or participate as a party in the proceeding.'").

From there, the director or the director's designee, i.e., the hearing officer, proceeds toward the only purpose of the informal hearing that is expressed in the statute: "to hear and *determine all disputes as to such bills* and interest due thereon." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(c). In the informal hearing, evidence "shall be limited to the written submissions of *the parties*." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(c). As for those who may participate, e.g., the parties—any carrier, provider or employer "may personally appear in or be represented at the hearing." K.S.A. 2018 Supp. 44-510j(c).

If the informal hearing does not result in a settlement between the parties, the hearing officer will schedule a formal hearing. K.S.A. 2018 Supp. 44-510j(c)-(d). But before a formal hearing occurs, the director may seek independent reviews of the disputed bill for consideration at the hearing. First, a utilization review of service providers can be performed and result in a report indicating, among other things, whether a provider's "*fees* for such treatment or services were *excessive*." (Emphases added.) K.S.A. 2018 Supp. 44-510j(d)(1). Second, after receiving the report the director may also order a "peer review." K.S.A. 2018 Supp. 44-510(d)(1). This is an evaluation by a peer review committee of "the appropriateness, quality *and cost* of health care and health

14

services provided a patient." (Emphasis added.) K.S.A. 44-508(o); see *Greathouse v. KASB Risk Management Services*, 44 Kan. App. 2d 29, 32, 237 P.3d 1250 (2010) (peer review of the audit).

The officer presiding at the formal hearing—the hearing officer, medical administrator, or both (K.S.A. 2018 Supp. 44-510j[d][2])—considers whether "a provider or facility has made *excessive charges* or provided or ordered unjustified treatment, services, hospitalization or visits." (Emphasis added.) K.S.A. 2018 Supp. 44-510j(d)(2). And if the hearing officer so holds, such provider "may be ordered to repay any fees or charges collected therefor." K.S.A. 2018 Supp. 44-510j(d)(2). Additionally, if it is determined that, among other things, the "fees for such treatment or services were excessive," a report may be sent to the licensing board of the provider. K.S.A. 2018 Supp. 44-510j(d)(2).

As with the informal hearing, the "parties to the dispute," e.g., carrier and provider "shall have the right to appear or be represented . . ." at the formal hearing. K.S.A. 2018 Supp. 44-510j(d)(2). Additionally, the "parties to the dispute . . . may produce witnesses, including expert witnesses," and "such other relevant evidence as may be otherwise allowed under the workers compensation act." K.S.A. 2018 Supp. 44-510j(d)(2).

But even more important than the statutory language regarding the exclusivity of the fee dispute issue and the limitation on the particular entities allowed to participate in the dispute, is the binding effect of the fee schedule on the provider. This "binding effect" concept appears repeatedly. First, subsection (h) of the designated fee dispute statute provides "[a]ny . . . hospital . . . which accept[s] the terms of the workers compensation act by providing services or material thereunder *shall be bound by the fees approved by the director*." (Emphasis added.) Second, that subsection tracks with subsection (e) of the immediately preceding statute, K.S.A. 2018 Supp. 44-510i:  "All fees and other charges

15

paid for . . . treatment, care and attendance provided by any . . . hospital . . . *shall not exceed the amounts prescribed by the schedule of maximum fees* established under this section . . . ." (Emphasis added.) Third, subsection (c)(3) of K.S.A. 2018 Supp. 44-510i provides that any billing which a hospital makes to any patient in connection with "the fee schedule adopted under this section, *which is or may be in excess of* or not in accordance with *such . . . fee schedule, is unlawful*, void and unenforceable as a debt." (Emphases added.)

In short, the theme throughout all of K.S.A. 2018 Supp. 44-510j is consistent with its opening sentence: its narrow purpose is to resolve fee disputes, typically between carrier and provider. As a result, we conclude the issue of the rulemaking by the director—and the results of any accidental rulemaking—were not properly before the Board on appeal from the hearing officer. See K.S.A. 77-602(j) ("'Rulemaking' means the process for formulation and adoption of a rule and regulation."). What was proper was the precise issue of whether Via Christi has charged fees in excess of the limits permitted in the 2011 maximum fee schedule. See K.S.A. 2011 Supp. 44-510i(e), (c)(3); K.S.A. 44-510j(h). So we conclude that the Board's refusal to expand the parameters of the fee dispute statute—K.S.A. 2018 Supp. 44-510j—was not, as Via Christi alleges, "unreasonable, arbitrary or capricious" as required for relief under K.S.A. 2018 Supp. 77-621(c)(8). See *Wheatland Electric*, 46 Kan. App. 2d at 757 ("Essentially, the test under K.S.A. 77-621[c][8] determines the reasonableness of the agency's exercise of discretion in reaching its decision based upon the agency's factual findings *and the applicable law*.").

Similarly, when the Board upheld the plain language ("whichever is least") of the 2011 maximum fee schedule created under the director's statutory authority, we fail to see how its enforcement of that schedule is unreasonable, arbitrary, or capricious. *Protests of Oakhill Land Co*., 46 Kan. App. 2d at 1115 ("A challenge under K.S.A. 2010

Supp. 77-621[c][8] attacks the quality of the agency's reasoning."); see also *Wheatland Electric*, 46 Kan. App. 2d at 757. Cf. *L.E.H. ex rel. D.H. v. State Dept. of Social and Rehabilitation Services*, 44 Kan. App. 2d 798, 803, 241 P.3d 167 (2010) (When regulation's meaning is clear from the plain language used, court generally should give the regulation its plain-language meaning.).

Having agreed with Paradigm on this dispositive point, we need not reach any others alleged. See *Keiswetter v. State*, 304 Kan. 362, 373, 373 P.3d 803 (2016) (alternate bases for rejecting plaintiff's relief need not be considered by appellate court) (citing cases).

CONCLUSION

The decision of the Court of Appeals reversing the Board is reversed. The decisions of the Board and the hearing officer are affirmed.

LUCKERT and JOHNSON, JJ., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 116,692 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616. Justice Lee A. Johnson retired on September 6, 2019, and did not participate in the decision of No. 116,692.